23 Cal.Rptr. 506]

[Civ. No. 19981.    First Dist., Div. Two.    July 24, 1962.]

WESTERN CONCRETE STRUCTURES COMPANY, INC., Plaintiff and Appellant, v. JAMES I. BARNES CONSTRUCTION COMPANY, Defendant and Appellant; SEABOARD SURETY COMPANY, Defendant and Respondent.

2

· Spensley, Horn & Jubas and Marvin Jubas for Plaintiff and Appellant.

Wallace & Wallace and W. W. Wallace for Defendant and Appellant and Defendant and Respondent.

AGEE, J.—The judgment herein awarded plaintiff, Western Concrete Structures Co., Inc., $18,373.70 as against defendant James I. Barnes Construction Co., and awarded defendant Seaboard Surety Co. $1,500 (attorney fees) as against Western. Each party appeals from the respective portions of the judgment which it deems to be unfavorable. The trial court made extensive findings of fact and each of these findings is supported by substantial evidence.

Much effort on this appeal is devoted to contentions that the trial court failed to make findings on many subordinate issues raised at the trial and on many factual allegations set forth in the pleadings. Many of the findings sought by defendants would necessarily be adverse to them and others are rendered superfluous by the findings made. Moreover, since it does not appear from the record that defendants requested any specific findings on any of the issues involved, we are not precluded by section 634 of the Code of Civil Procedure from inferring findings by necessary implication from those made, were it necessary. In our opinion, the findings made herein are adequate and are determinative of the case. Any failure to make more specific findings is immaterial. (See *Daniel Orifice Fitting Co.* v. *Whalen,* 198 Cal.App.2d 791, 801 [18 Cal.Rptr. 659]; *Santos* v. *Wing,* 197 Cal.App.2d 678, 683 [17 Cal.Rptr. 457]; *Williams* v. *Elliott,* 127 Cal.App.2d 357, 361 [273 P.2d 953].)

Barnes had the general contract let by the Division of Architecture, Department of Public Works of the State of California, for the construction of ward buildings at the Sonoma State Hospital. Barnes later obtained the general contract for the construction of an administration building at the hospital. Seaboard was the surety on Barnes' bond. Western is a specialist in construction work involving the prestressing and lifting of prestressed concrete slabs. In this type of operation, the concrete slabs which form the roof and floors of a building being constructed are poured at the ground level, prestressed, and then lifted into position by means of multiple electronically controlled hydraulic jacks attached to steel vertical lifting columns.

On September 5, 1956, Western and Barnes executed a subcontract under which Western was to prestress, lift and fix in place the concrete slabs to be used in the construction of

the ward buildings. (Western contends that it also became the subcontractor for the same type of work on the administration building but the trial court found to the contrary and did not allow Western any recovery thereon.)

Barnes was responsible for the scheduling of the commencement of Western's operations. After several attempts at scheduling and rescheduling Western's work, and pursuant to written communications between the parties, Western's crew and equipment arrived from southern California at the jobsite on June 10, 1957, and completed the placing of its equipment in position on that day. The court found that Western was ready to begin the actual lifting operations on June 11th. However, because of work which Barnes was still doing on the slabs, they were not in a condition to be lifted, and Western's crew and equipment were thereby caused to stand idle until June 17th. The trial court further found that Western had sustained a loss of $6,000 by reason of this enforced idleness and awarded such amount as damages. (*Gollaher* v. *Midwood Constr. Co.*, 194 Cal.App.2d 640, 649 [15 Cal.Rptr. 292].) The ground upon which this recovery was allowed is that Barnes by its conduct had induced Western reasonably to rely to its detriment upon June 10th as its starting date.

When Western commenced its lifting operations on June 17th, some of the columns erected by Barnes, and upon which the slabs were to be lifted, were discovered to be defective. Defects were also found which involved the circular metal ''collars'' which were embedded in the slabs around the lifting columns and to which the hydraulic lifting jacks were to be attached. These defects were caused by Barnes and had to be corrected by Western. The trial court assessed Western's damages in this respect at $2,400.

Barnes was entitled to retain 10 per cent of the progress payments to be made to Western under the subcontract until 30 days after Barnes had received its final payment on the general contract from the state. This payment was received on September 30, 1958. The judgment therefore includes the amount so retained by Barnes, $8,704.30, plus interest thereon from October 30, 1958, amounting to $1,269.40.

Western contends that interest on the retention payment should commence 30 days after July 1, 1957, when it completed its work under the subcontract. We do not agree. The subcontract provides that such payment ''shall be made within thirty days after completion of the work included in this con-

tract *and* written acceptance by the Architect *and* full payment therefor by the Owner . . .'' (emphasis ours). The first of these conditions occurred when Western completed its work under the subcontract. The second condition did not occur until September 16, 1958, when the Department of Architecture accepted the project. The third condition occurred on September 30, 1958, when the state made the final payment called for under the general contract. The trial court found no ambiguity in the provision relating to when Western was entitled to receive the retention payment and neither do we.

Barnes and Seaboard both urge the defense of accord and satisfaction as to Western's claims for $6,000 and $2,400. By invoice 52(23-3), dated June 21, 1957, Western billed Barnes for the final progress payment. The amount was adjusted to $28,636.20, in accordance with a deduction of $590 previously agreed upon by Barnes and Western in an exchange of letters dated February 8, 1957, and February 11, 1957, respectively. The invoice acknowledged previous payments of $21,226.05 and $28,476.45. The total amount of the contract, as adjusted, was $87,043. The payment of $28,636.20 under invoice 52 (23-3) was due July 15, 1957, and would leave the balance of $8,704.30 to be retained by Barnes, as provided in the contract.

By invoice 53(23-4), also dated June 21, 1957, Western billed Barnes for the charges of $6,000 and $2,400, discussed above.

On July 26th, Barnes remitted to Western a check in the amount of $28,636.20 by a letter of transmittal which stated: ''Enclosed herewith find remittance in the amount of $28,636.20 for payment in full for services to date. We are also returning Invoice 53(23-4), which by previous correspondence we have advised you is an entirely unwarranted and unauthorized charge.'' There was no dispute as to either the fact of the obligation as stated in invoice 52(23-3) or the adjusted amount which Barnes was obliged to pay thereunder. Barnes' own witness so testified. However, typed across the face of the check was the notation: ''Acceptance of this check acknowledges payment in full of all moneys due to date and specifically cancels Invoice 53(23-4) dated June 21, 1957.''

Western replied by letter, dated July 29th, that it did not accept the check as full settlement of its account to date nor as settlement in any part of invoice 53(23-4), but that it did accept the check as part payment of invoice 52(23-3). It stated that it was striking the above-quoted language from the face

of the check and sending the check through normal banking channels as partial payment of the progress payment invoice, reserving all rights concerning the claims represented in invoice 53(23-4) and that if "cashing your Check No. 0103 does not meet with your approval you may stop payment on said check." A copy of this letter was received by Barnes on July 31st, the date upon which Western deposited the check for collection. No attempt was made by Barnes to stop payment on the check. Rather, it took the position expressed in its next letter to Western: "You cashed that check, therefore, you accepted the same as full payment of all moneys owing to you to date."

Upon a finding that the payment of the progress payment invoice was the absolute duty of Barnes and could not serve as consideration for an agreement to discharge Western's separate disputed claims for the $8,400 total damages, the trial court concluded that neither of Western's two claims for damages were barred by the defense of accord and satisfaction.

The general rule is that where a check for an amount less than that claimed is sent to the creditor with a statement that it is in full satisfaction of the claim, its acceptance by the creditor constitutes an accord and satisfaction, even though the creditor states at the time that the amount tendered is not accepted in full satisfaction. (*Sierra etc. P. Co.* v. *Universal Elec. etc. Co.*, 197 Cal. 376, 387 [241 P. 76] ; *Potter* v. *Pacific Coast Lumber Co.*, 37 Cal.2d 592 [234 P.2d 16].)

To this general rule there is a well-recognized exception based upon the principle that an accord and satisfaction, like any other valid contract, requires a consideration. In *MacIsaac & Menke Co.* v. *Cardox Corp.* (1961) 193 Cal.App.2d 661 [14 Cal.Rptr. 523], the defendant contractor orally agreed with the plaintiff subcontractor to pay the reasonable cost of the additional work made necessary by the defendant's failure to provide plans and equipment in conformance with the original contract. The trial court found the reasonable value of this additional work to be $15,623.79. On appeal from an adverse judgment, the defendant urged that its liability, if any, for such work was limited to the sum of $8,991.11 by reason of a writing signed by plaintiff which acknowledged receipt of a final progress payment as payment in full of all sums due plaintiff other than the sum of $8,991.11, as to which there was a dispute. The appellate court rejected the conten-

8

tion, stating at pages 670-671: "There are numerous reasons why defendants' claim must fail, but we will dislodge it of any merit by merely pointing out that the receipt, the alleged accord agreement, is not supported by any consideration in that the payment of $6,139.25 [the final progress payment] was admittedly due and owing; therefore, the alleged accord and satisfaction agreement must fail for lack of consideration." (See also: *Moore* v. *Bartholomae Corp.*, 69 Cal.App. 2d 474 [159 P.2d 436]; *D. E. Sanford Co.* v. *Cory Glass etc. Co.*, 85 Cal.App.2d 724 [194 P.2d 127]; *Egan* v. *Crowther*, 74 Cal.App. 674 [241 P. 900].)

In the instant case, the progress payment of $28,636.20 was admittedly due and payable. It was separately invoiced and billed as such. The charges in the other invoice were in no way tied in or connected with such progress payment. When Barnes paid $28,636.20 on July 26, 1957, it was paying the exact amount, and no more, on an undisputed obligation which had been due and payable since July 15, 1957. There was therefore no consideration for the accord and satisfaction which Barnes claims was created upon the cashing of the check by Western. We go to the next point.

Seaboard was held to be the "prevailing party" within the meaning of section 4207 of the Government Code and was awarded $1,500 attorney fees. The reasons for Seaboard's success follow. Western's action as to the retention payment was held to be premature because it was commenced before the payment was due. On October 7, 1959, Western filed a supplemental complaint, alleging that the payment had by then become due. However, by that time the claim as against the surety had become barred by the expiration of the six months' time limit provided in section 4206 of the Government Code. (This limitation did not apply to Western's claim against Barnes.) Western's other claims, of $6,000 and $2,400, were allowed as against Barnes on the theory of damages for breach of contract by Barnes and not for services or materials furnished under the subcontract. Such claims were not covered under the surety bond. (See Gov. Code, § 4204.) As to the alleged administration building contract, the court found that no such contract had ever been executed.

Western attempted to prevail against Seaboard on the theory that the claims of $6,000 and $2,400 represented additional services rendered under and consistent with the ward building contract. But the trial court expressly rejected this theory

in its findings and stated that the recovery against Barnes on these claims was based upon breach of contract by Barnes. The evidence was conflicting as to many of the circumstances surrounding these claims but, viewing it in the light which supports the findings and judgment, it cannot be said that the trial court erred.

The trial court did not segregate the attorney fee award to Seaboard as between the cause of action on the ward building contract and the cause of action on the alleged administration building contract. The first part of its conclusions are under the heading of "Conclusions relating to the Ward Building Contract." None of the 10 paragraphs under this heading refer to attorney fees. Under the next heading, "Conclusions relating to the Administration Building Contract," there are three paragraphs. Paragraphs I and II completely dispose of this matter by stating that Western and Barnes had not entered into such a contract, either in fact or by implication. Then follows paragraph "III," which provides: "Defendant Seaboard Surety Co. is entitled to judgment for attorney's fees in the amount of $1,500.00 since plaintiff's successful theory is based on a breach of contract and is not within Government Code 4206. The amount awarded takes into account that the surety was not called on to provide separate counsel for itself in addition to the firm which appeared for defendant Barnes so as not to have the effect of compelling plaintiff to pay the attorney's fees of defendant Barnes." The judgment simply provides for the recovery by Seaboard against Western of $1,500 attorney fees.

Several months before the findings and conclusions were signed, the court filed its "Memorandum of Decision," in which it stated its intention to find in favor of Seaboard and to allow reasonable attorney's fees to it, adding the following indication as to the amount: "The allowance should represent such an apportionment of the cost of defense representation as will not have the effect of compelling plaintiff to pay the attorney's fees of defendant Barnes."

We think that it is reasonable to conclude that the attorney fee award was for Seaboard's total defense in the action and that the trial court's failure to segregate this amount as between the two causes of action was not prejudicial to Seaboard, particularly since the record does not disclose that Seaboard made any request for a specific finding on such issue. (See Code Civ. Proc., § 634.) The amount of

such award is largely within the discretion of the trial court and no showing has been made that it is unreasonable. (Cf. *Fidelity & Deposit Co.* v. *Whitson,* 187 Cal.App.2d 751, 759 [10 Cal.Rptr. 6].)

Barnes and Western each contend, respectively, that it is also a "prevailing party" within the meaning of section 4207 of the Government Code and, as such, is entitled to an award of attorney fees thereunder. Neither contention is well taken. Sections 4200-4208 of the Government Code relate to labor and material bonds required of contractors on public work projects and to actions by claimants against the surety on these bonds. The obligation sought to be enforced in such actions is that of the surety and not of the contractor, who, by the terms of section 4207, is not even a necessary party therein. (41 Cal.Jur.2d, Public Works and Contracts, § 81, p. 457.)

Section 4207 provides: "The filing of a verified claim is not a condition precedent to the maintenance of an action against the surety or sureties on the contractor's bond. An action on the bond may be maintained separately from and without the filing of an action against the officer or body by whom the contract was awarded. Upon the trial of the action, the court shall award to the prevailing party a reasonable attorney's fee, to be taxed as costs, and to be included in the judgment therein rendered."

Seaboard became entitled to a reasonable attorney's fee, as provided in section 4207, because it prevailed under the only two counts (sixth and seventh) to which it was a party. Both of these counts were based upon the sections of the Government Code referred to above. Only if Western had prevailed against Seaboard under either of these two counts would it have been entitled to attorney fees under the provisions of section 4207. (See *Lewis & Queen* v. *S. Edmondson & Sons,* 113 Cal.App.2d 705 [248 P.2d 973].)

Barnes' request for attorney fees is disposed of by our holding that the "prevailing party," as used in section 4207, is intended to be either the claimant who is successful in the action as against the surety or the surety who is successful against a claimant bringing an action against it under the sections of the Government Code referred to above. In this latter instance, to hold that the contractor against whom the claim is made should also be awarded attorney fees would result in the imposition of double attorney fees upon an unsuccessful claimant. We do not believe that section 4207 was so

intended or should be so interpreted, particularly where, as here, the claimant is successful in recovering a judgment against the contractor. The use of the singular instead of the plural in section 4207 is consistent with this conclusion. We repeat: "Upon the trial of the action, the court shall award to *the* prevailing party *a* reasonable attorney's *fee*, . . ." (emphasis added) (Gov. Code, § 4207).

Barnes complains that adequate findings were not made on the issues raised by its counterclaim, made up of the costs of premiums on bonds to release money withheld by the state pursuant to stop notices filed by Western, interest on such money during the period it was withheld, defense of a mandamus action and attorney fees. The trial court disallowed these items and made the following findings: "Except as otherwise hereinabove specifically found . . . none of the allegations . . . or counter claims and/or matters of set off in the answers of the answering defendants are true." It is further stated in the conclusions that "Barnes is not entitled to any set-off for any of its claims against plaintiff." This is sufficient. (*Carnation Co.* v. *Marcevich,* 186 Cal.App.2d 618, 620 [9 Cal.Rptr. 80]; *Kalmus* v. *Cedars of Lebanon Hospital,* 132 Cal.App.2d 243, 245-246 [281 P.2d 872].)

Barnes' contention that it is entitled to costs is untenable. It is true that the court found in its favor with respect to the causes of action relating to the administration building contract, but this does not mean that Barnes thereby became a defendant with "a judgment in his favor" within the meaning of the statute allowing costs to such a defendant. (Code Civ. Proc., § 1032, subd. (b).) The fact is that the *judgment* is in favor of Western as against Barnes and that it is Western, and not Barnes, who is entitled to costs as against the other "whether his [Western's] recovery be for the whole or a portion of his claim, or whether his claim be made up of one or several causes of action." (*Fox* v. *Hale & Norcross S. M. Co.,* 122 Cal. 219, 223 [54 P. 731].)

As to Seaboard, it was a defendant in whose favor judgment was rendered but it was not a defendant who was "not united in interest" with its codefendant, Barnes, so as to qualify it to costs as of course. (Code Civ. Proc., § 1032, subd. (b).) In other words, Barnes and Seaboard were defendants who *were* "united in interest." Any right which Western had to recover against Seaboard, as surety, was necessarily dependent upon Western's right to recover against

Barnes. (*Flickinger* v. *Swedlow Engineering Co.*, 45 Cal.2d 388, 394 [289 P.2d 214].) The reasons why Seaboard, despite its unity of interest with Barnes, succeeded where Barnes failed have already been discussed.

The significance of the foregoing is indicated by the following provision in section 1032, subd. (b): "When there are several defendants in any action . . . *not* united in interest, and making separate defenses by separate answers, and plaintiff fails to recover judgment against all, the court must award costs to such of the defendants as have judgment in their favor." (Emphasis added.)

An allowance of costs to Seaboard therefore becomes discretionary, in accordance with subdivision (c) of section 1032, and there has been no showing of any abuse of such discretion.

Finally, Barnes contends that it was error for the trial court to refuse to admit the unsigned and uncertified deposition of a witness into evidence. All that the record discloses is that this witness was present in court on the first day of trial but that Western had rested its case without calling him. Barnes' real grievance appears to be directed toward Western's refusal to stipulate to the admission of the so-called deposition. However, the sustaining of Western's objection was proper. (*Voorheis* v. *Hawthorne-Michaels Co.*, 151 Cal. App.2d 688, 694 [312 P.2d 51].) Moreover, a sufficient foundation had not been laid. (Code Civ. Proc., § 2016, subd. (d) (3).)

There is no merit to Western's contention that a subcontract on the administration building project, as between it and Barnes, was created or came into existence.

Western had sent to Barnes a proposal for work on the administration building. This was on one of Western's printed forms, on the back of which were paragraphs 3 to 21, inclusive, in small print. Paragraph 17 provided as follows: "Listing the Seller [Western] in the Contractor's bid as provided by Title 1, Division 5, Chapter 2 of the California Administrative Code constitutes an acceptance of this Proposal." On the face, in relatively large print, appears the following: "When accepted this Proposal will constitute a firm contract between both parties hereto." Immediately below is the following: "ACCEPTED for_____by_____." The acceptance was not signed by Barnes, and Western's president testified that Barnes never accepted the proposal.

However, Barnes listed Western as a subcontractor in the bid which it submitted to the state. (Gov. Code, § 4102.) Western contends that this conduct effected an acceptance of its proposal, impliedly conditioned, of course, upon the acceptance by the state of Barnes' bid. After the state had accepted the bid, Western refused to execute a subcontract prepared by Barnes and insisted that the proposal constituted the contract. On September 19, 1957, the state approved the substitution of another subcontractor. The trial court made the following finding: ''The proposal [of Western] was never accepted by defendant Barnes, and no contract arose between these parties as regards the construction of the administration building.''

The court further found that the condition contained in paragraph 17 was not brought to the attention of Barnes, that Barnes had no actual notice of it, and that the creation of a subcontract by the happening of such condition was a departure from the practice followed by the same parties in the case of the previous ward building subcontract. Since Barnes did not accept Western's proposal and was also unaware of the said condition contained therein, there is no basis upon which to hold that Barnes accepted such proposal by merely listing Western as a subcontractor in its bid. (*Klose* v. *Sequoia Union High School Dist.*, 118 Cal.App.2d 636, 640-641 [258 P.2d 515].)

The judgment is affirmed, each party to bear its own respective costs.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied August 20, 1962, and defendants' petition for a hearing by the Supreme Court was denied September 26, 1962.