500 P.2d 632

**CORBIN–DYKES ELECTRIC COMPANY,**
an Arizona corporation, Appellant,

v.

**Walter BURR and Jane Doe Burr, his wife,
dba Burr & Sons Construction Co.,
Appellees.**

**No. I CA–CIV 1677.**

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 31, 1972.

Trew & Woodford by R. R. Woodford,
Phoenix, for appellant.

Ash & Reeb by Gary B. Larson, Mesa,
for appellees.

EUBANK, Judge.

This appeal from a summary judgment
questions whether a contractual relation-
ship results from a situation where a sub-
contractor submits a bid for the electrical
subcontract to the general contractor, who
in turn includes it within his bid for the
general construction contract which is sub-
sequently awarded the general contractor.

The facts are as follows:

General Motors Corporation requested
bids from general contractors to construct

the central air-conditioning plant at its proving grounds located east of the city of Mesa. The defendant-appellee Walter Burr, et al., a general contractor, hereafter "Burr", was interested in obtaining the contract and as a result received bids for the electrical subcontract solicited by Lowry & Sorensen, the consulting engineers on the project. One of the bids received by Burr was from the plaintiff-appellant Corbin-Dykes Electric Company, hereafter "Corbin-Dykes". Burr incorporated Corbin-Dykes' subcontract bid, which was the low bid, into his general contract bid and submitted it to General Motors Corporation. All bids were rejected by General Motors because they exceeded the cost estimate; and the project was rebid on October 14, 1969. The second bid submitted by Burr also included the Corbin-Dykes subcontract bid; however, prior to submitting the second bid, Burr had received another bid from Sands Electric Company which matched the Corbin-Dykes bid but also provided that, in the event Sands could work the proposed project in conjunction with its current project at the proving grounds, they would reduce their subcontract bid by $4000. When the second round of bids was opened, Burr was awarded the general contract, and since Sands Electric's other project at the proving grounds was not yet completed, Burr accepted Sands' bid for the electric subcontract as the low bid.

Corbin-Dykes objected to this selection of Sands as the subcontractor and sued Burr for breach of their alleged subcontract. The subcontract was denied by Burr in his answer; and following several depositions, Burr moved for summary judgment, which was granted. Corbin-Dykes appeals from that summary judgment.

Two questions are raised by Corbin-Dykes for review. First, whether taking all inferences in a light most favorable to Corbin-Dykes the trial court was justified in granting the summary judgment to Burr; Second, whether there remains a genuine issue as to a material fact which would preclude granting the summary judgment.

Both of these questions are based upon Corbin-Dykes' contention that a custom and usage exists in the trade to the effect that a subcontractor who is listed in the general contractor's bid will receive the subcontract, if the general contractor is successful and is awarded the general contract. This custom and usage would be introduced at the trial, according to Corbin-Dykes, in order to prove the contract existed between it and Burr, or in other words to prove the acceptance by Burr of Corbin-Dykes' bid offer. The record shows that there was no other evidence of acceptance by Burr of the subcontract offer.

■ In Arizona the law is clear that Corbin-Dykes' bid to Burr was nothing more than an offer to perform the subcontract under specified terms, and that it did not ripen into a contract until it was voluntarily accepted by Burr. Universal Construction Co. v. Arizona Consolidated Masonry & Plastering Contractors Ass'n., 93 Ariz. 4, 377 P.2d 1017 (1963). The law and its related problems are well stated in the 53 Virginia L.Rev. 1720 (1967), Law note: Another Look at Construction Bidding and Contracts at Formation, which states:

> "From the time a general contractor (general) receives bids from subcontractors (subs) until he formally accepts one of those bids, the parties are not adequately protected by the common law. Although they are forced by the commercial context to rely upon each other during this period, at common law their relationship cannot be contractual until the general responds with the requisite promise of acceptance. To some extent the promissory estoppel doctrine has alleviated the general's problems by binding the sub to perform according to the terms of his bid. But this protection is one-sided, and despite the view of some courts that promissory estoppel is a panacea, it appears that in confining the scope of protection to the general, the

doctrine in fact raises serious problems." (53 Virginia L.Rev. at 1720).

The serious problems referred to relate primarily to "bid shopping", for an excellent discussion of which see 18 U.C.L.A.L. Rev. 389 (1970), Law Comment: Bid Shopping and Peddling In the Subcontract Construction Industry. *See also,* 17 C.J.S. Contracts § 48, p. 695.

If the law requires an actual voluntary acceptance of Corbin-Dykes' bid by Burr, can this acceptance be established solely by custom and usage in the trade evidence as offered by Corbin-Dykes? We think not.

In order for there to be any contract between Corbin-Dykes and Burr there must be a manifestation of mutual assent thereto by both, and the acts by which their mutual assent is manifested must show that they intended to do those acts. 1 Restatement of Contracts, § 20 (1932). This manifestation of intent, i. e., offer or acceptance, is determined by the words used and the other manifestations of intent having reference to the contract. 1 Restatement of Contracts, §§ 226, 227 (1932). Custom or usage is defined as an habitual or customary practice, more or less widespread, which prevails within a geographical or sociological area. Sam Levitz Furniture Co. v. Safeway Stores, Inc., 10 Ariz.App. 225, 457 P.2d 938 (1969). Usage is a course of conduct based upon a series of actual occurrences. Coyner Crop Dusters v. Marsh, 90 Ariz. 157, 175, 367 P.2d 208, 220 (1961), rehearing granted on other grounds 91 Ariz. 371, 372 P.2d 708 (1962).[1] However, evidence of custom or usage is admissible only where an existing agreement between the parties is ambiguous, to show what the parties intended by their agreement. Coury Bros. Ranches, Inc. v. Ellsworth, 103 Ariz. 515, 446 P.2d 458 (1968); Len-

slite Co. v. Zocher, 95 Ariz. 208, 388 P.2d 421 (1964); Gray v. Headley, 35 Ariz. 232, 276 P. 523 (1929). Primarily this is limited to proving the meaning of words or phrases used in the agreement. Sam Levitz Furniture Co. v. Safeway Stores, Inc., 10 Ariz.App. 225, 457 P.2d 938 (1969); Pioneer Constructors v. Symes, 77 Ariz. 107, 267 P.2d 740 (1954). M. Udall, Ariz.Law of Evidence, § 157, pp. 328–330 (1960).

Corbin-Dykes relies on no evidence of the acceptance of their offer by Burr except the above referred to custom and usage. As we have seen, a "voluntary acceptance" is required to bind Burr. It is also clear from the cited case law that such custom and usage evidence cannot be used to initially establish acceptance or the manifestation of mutual assent. Since there was no evidence presented by Corbin-Dykes from which to draw an inference that a genuine issue as to a material fact exists which would preclude the granting of the summary judgment complained of (Rule 56(c), Rules of Civil Procedure, 16 A.R.S.), and since the question of "acceptance" is one of law, it was properly disposed of by the trial court by summary judgment.

In our opinion the record shows no evidence of a voluntary acceptance of the offer involved, since the inclusion of Corbin-Dykes' subcontract bid as a part of the general contract bid did not constitute such an acceptance, and the offer never was accepted by Burr in any other manner. Universal Construction Co. v. Arizona Consolidated Masonry & Plastering Contractors Ass'n, supra.

The summary judgment is affirmed.

HAIRE, Chief Judge, Division 1, and JACOBSON, J., concur.

1. Although the Uniform Commercial Code (A.R.S. § 44–2201 et seq.) is not applicable to a transaction such as is involved herein, its definition of "Course of Dealing and Usage of Trade" at A.R.S. § 44–2212 is worthy of note.