582 P.2d 1074

**Leslie L. MITCHELL, d/b/a Mitchell Construction Company, Plaintiff-Appellant,**

v.

**John SIQUEIROS, d/b/a J & R Plumbing & Heating Company, Defendant-Respondent.**

No. 12407.

Supreme Court of Idaho.

July 5, 1978.

Rehearing Denied Sept. 19, 1978.

John B. Kugler, Pocatello, for plaintiff-appellant.

Eugene L. Bush, Idaho Falls, for defendant-respondent.

McFADDEN, Justice.

This appeal is a sequel to *Neilsen & Co. v. Cassia & Twin Falls County oint Class A School District 151*, 96 Idaho 763, 536 P.2d 1113 (1975) (hereinafter *Neilsen* ), involving a public works contract for the construction of the Burley Junior High School. The controversy concerns a specialty subcontract bid to perform a portion of the general contract construction project. The district court granted summary judgment for the specialty subcontractor, defendant-respondent John Siqueiros, doing business as J & R Plumbing and Heating Company. The general contractor, plaintiff-appellant Leslie L. Mitchell, doing business as Mitchell Construction Company, appeals and argues that: (1) determining whether a subcontract existed is a question of fact precluding summary judgment; (2) summary judgment was improper because appellant alleged a claim based on fraudulent misrepresentation; and (3) the district court erred in granting summary judgment because appellant's complaint supports a claim based on promissory estoppel. It is the conclusion of the court that no genuine issue of material fact exists concerning appellant's subcontract claim; however, unresolved issues of fact concerning appellant's fraudulent misrepresentation claim preclude summary judgment. The judgment of the district court is therefore affirmed in part and reversed in part. Because of the court's disposition of the case, appellant's third contention is not addressed.

On February 14, 1974, respondent filed an application for a Class AAA public works contractor's license with the Idaho Public Works Contractors State License Board. Respondent then held a Class AA license authorizing public works contracts not in excess of $250,000.00; a Class AAA license would authorize performing public works contracts in excess of $250,000.00. At the March 3, 1974, meeting of the state licensing board respondent's Class AAA license application was approved but issuance de-

ferred because of the board's thirty day filing requirement.[1]

On March 28, 1974, respondent submitted a subcontract bid through the Idaho Subcontractors Bid Service to appellant. The $465,331.00 subcontract bid was for the plumbing and mechanical portion of the Burley Junior High School construction project. This bid noted that respondent then held a public works contractor's license number 4071–AA. The numerals 4071 indicate the work type or specialty respondent could perform (specialty—plumbing and mechanical); the letters AA signify the volume in dollar amounts that respondent was licensed to perform (costs not exceeding $250,000.00). Respondent's bid also noted "Our firm has been cleared by state office for AAA license."

At the April 3, 1974, bid opening appellant submitted the lowest prime bid for the construction project. Appellant named respondent as the plumbing and mechanical subcontractor in the contract bid,[2] and appellant was awarded the construction contract for the project. Appellant then tendered to respondent a written contract for the plumbing and mechanical portions of the construction project, conditioned upon respondent obtaining a Class AAA license. However, at the April 8, 1974, meeting of the state licensing board respondent's application for a Class AAA license was again deferred because respondent had submitted to appellant a subcontract bid in excess of

$250,000 without first obtaining a Class AAA license. Because of this deferral, appellant did not accept respondent's subcontract offer and appellant executed a written contract for the plumbing and mechanical subcontract with another subcontractor who performed the work at an increased cost.

Appellant's complaint sought to recover these added costs based on breach of contract and tortious misrepresentation. On August 4, 1976, respondent's motion for summary judgment was granted. This appeal is from that judgment.

█ We note initially that in ruling on an appeal from summary judgment this court will only determine: "1. Whether there is a genuine issue as to any material fact; and 2. Whether the moving party is entitled to judgment as a matter of law." *Stewart v. Hood Corporation,* 95 Idaho 198, 200, 506 P.2d 95, 97 (1973). This determination is to be based on the "pleadings, depositions, and admissions on file, together with the affidavits, if any . . . ." I.R.C.P. 56(c). However, courts should liberally construe the facts in favor of the party opposing the motion, together with all reasonable inferences from the evidence. *Farmer's Insurance Company of Idaho v. Brown,* 97 Idaho 380, 544 P.2d 1150 (1976).

### I

Appellant maintains that when a subcontractor is named, pursuant to I.C. § 67–

---

1. I.C. § 54–1911 provides in part: "Applications for original licenses, together with the fees therefor, shall be filed with the board at least thirty (30) days prior to consideration thereof by the board."

2. I.C. § 67–2310 requires a general or prime contractor to name the proposed specialty subcontractor on its bid:

   Hereafter, before the state of Idaho, the separate counties, cities, towns, villages or school districts within the state of Idaho shall let contracts for the construction, alteration or repair of any and all buildings, improvements or public works, and such construction, alteration or repair requires plumbing, heating and air-conditioning work, or electrical work, the general contractor shall be required to include in his bid the name, or names and address, or addresses, of the subcontractors who shall, in the event the contractor secures

the contract, subcontract the plumbing, heating and air-conditioning work, and electrical work under the general contract; provided, however, that this act shall not apply to the construction, alteration or repair of public buildings under the jurisdiction of the board of regents of the University of Idaho; further that this act shall have no application to the preparation and submission of plans and specifications pursuant to section 50–316, Idaho Code. Failure to name subcontractors as required by this section shall render any bid submitted by a general contractor unresponsive and void. Subcontractors named in accordance with the provisions of this section must possess an appropriate license or certificate of competency issued by the state of Idaho covering the contractor work classification in which the subcontractor is named.

2310, to perform the mechanical subcontract portion of a public works project, a contract exists if the general contractor is awarded the prime contract. Appellant argues that the subcontract bid is an offer, which is conditionally accepted by naming the subcontractor, upon the express condition that the general contractor be awarded the prime contract by the awarding authority. We find nothing in common law contract principles, in I.C. § 67–2310 or in *Neilsen, supra,* to support this position.

██ It is a settled common law contract principle that utilizing a subcontractor's bid in submitting the prime or general contract bid does not, without more, constitute an acceptance of the subcontractor's offer conditioned upon being awarded the general contract by the awarding authority. *C. H. Leavell and Co. v. Grafe and Associates, Inc.,* 90 Idaho 502, 414 P.2d 873 (1966). *Accord, Universal Const. Co. v. Arizona Consolidated Masonry & Plastering Contractors Ass'n,* 93 Ariz. 4, 377 P.2d 1017 (1963); *Corbin-Dykes Electric Co. v. Burr,* 18 Ariz.App. 101, 500 P.2d 632 (1972); *Southern Cal. Acoustics Co., Inc. v. C. V. Holder, Inc.,* 71 Cal.2d 719, 79 Cal.Rptr. 319, 456 P.2d 975 (1969); *Klose v. Sequoia Union High School Dist.,* 118 Cal.App.2d 636, 258 P.2d 515 (1953); *K. L. House Constr. Co., Inc. v. Watson,* 84 N.M. 783, 508 P.2d 592 (1973); *R. J. Daum Constr. Co. v. Child,* 122 Utah 194, 247 P.2d 817 (1952); *Plumbing Shop, Inc. v. Pitts,* 67 Wash.2d 514, 408 P.2d 382 (1965); *Milone and Tucci, Inc. v. Bona Fide Builders,* 49 Wash.2d 363, 301 P.2d 759 (1956). Unless the facts otherwise disclose, utilizing respondent's bid was not by itself an acceptance of the subcontract bid offer.

██ Furthermore, appellant admitted in his deposition that he did not enter into a contract with respondent for the mechanical portion of the Burley Junior High School construction project.

Q. Now you testified that in this case you used the Home Plumbing and Heating Company, I believe of Twin Falls, as your mechanical and plumbing subcontractors in this job, the Burley Junior High School?

A. We ended up using Home Plumbing and Heating to accomplish the mechanical work on the project.

Q. Did you enter into a contract with them?

A. Yes, sir.

Q. And on a subcontract on a project in which you are the prime or general contractor where the subcontract involves $465,000 is it your common and usual practice to use a contract between you and the subcontractor?

A. Always.

Q. And included in that contract are requirements that they have a bond as well as a great many other things?

A. There is several stipulations, yes.

Q. Now have you ever entered into a contract with J & R Plumbing & Heating Company on the Burley Junior High School job?

. . . . .

A. I was never legally able to consummate a contract with the J & R Heating & Plumbing Company.

Q. So do I take it your answer then that it was, no, you have not—in effect you have not entered into a contract with J & R on that job?

A. To this date we have not entered into a legal contract on the subject job.

Appellant maintains that this testimony refers to a written contract and does not preclude another less formal contract. Even if this is true, the following testimony by appellant discloses that appellant did not intend to incur legal obligations until a writing had been adopted:

Q. And that's when a contract is entered into. Your understanding when you have a contract is when they give you a contract for signature and you sign it, is that correct?

A. That's correct.

Q. Now with reference to your subcontractors, isn't it true they also submit bids?

A. Yes.

Q. And isn't it your procedure then when you have selected your subcontractor to submit a contract to him?

A. Yes.

Q. And upon his then executing and returning to you the contract there is then a contract?

A. Yes.

In order for a contract to exist, a distinct understanding common to both parties is necessary. *Brothers v. Arave*, 67 Idaho 171, 174 P.2d 202 (1946). Whether a contract exists when contracting parties agree to reduce their agreement to writing, is a question of the parties' intent. *Elliott v. Pope*, 42 Idaho 505, 247 P. 796 (1926); *Idaho Implement Co., Ltd. v. Lambach*, 16 Idaho 497, 101 P. 951 (1909). Where it is clear that one party has agreed that an oral agreement must be reduced to writing before it shall be binding, there is no contract until a formal document is executed. *Thrift Shop, Inc. v. Alaska Mut. Savings Bank*, 398 P.2d 657 (Alaska 1965); *Columbia Pictures Corp. v. De Toth*, 26 Cal.2d 753, 161 P.2d 217 (1945); *King v. Wenger*, 219 Kan. 668, 549 P.2d 986 (1976); *Widett v. Bond Estate, Inc.*, 79 Nev. 284, 382 P.2d 212 (1963); *Dolge v. Masek*, 70 Nev. 314, 268 P.2d 919 (1954); *KVI, Inc. v. Doernbecher*, 24 Wash.2d 943, 167 P.2d 1002 (1946). *See also* Restatement (Second) of Contracts § 26, Comment b (rev'd and edited 1973).

■ It is uncontroverted that appellant did not intend to be bound until execution of a formal written contract. Thus there was no genuine issue of fact concerning his intent. Therefore, unless I.C. § 67–2310 or prior interpretations of that statute alter the result, the trial court was correct in holding as a matter of law that there was no contractual relationship that would support a claim based upon breach of contract.

We find the reasoning of the following cases persuasive in declining to hold that the Idaho legislature intended to change the general law of contracts by adopting I.C. § 67–2310. *Klose v. Sequoia Union High School Dist.*, 118 Cal.App.2d 636, 258 P.2d 515 (1953), involved a general public works contract bid to remodel a high school.

Appellant subcontractor was listed as the electrical subcontractor of the project pursuant to a naming statute providing as follows:

Any officer, department, board or commission taking bids for the construction of any public work or improvement shall provide . . . that any person making a bid or offer to perform the work, shall, in his bid or offer, set forth:

(a) The name and location of the place of business of each subcontractor who will perform work or labor or render service to the general contractor in or about the construction of the work or improvement in an amount in excess of one-half (½) of one per cent (1%) of the general contractor's total bid.

After noting that no contractual status is created merely by utilizing a subcontractor's bid, the California court addressed the issue of whether this result was changed by the above statute and a similar statute prohibiting the substitution of subcontractors so named:

In order to uphold [petitioner's] interpretation of section 4104(d) we would have to hold that the Legislature intended by that amendment to change the general law of contracts, and to confer on subcontractors the irrevocable right to perform the contract as soon as the awarding authority accepted the general contractor's bid except where the subcontractor refuses to execute a contract. We can find no such expressed or implied intent in the sections. They appear in the chapter of the public works law dealing with "Subletting and Subcontracting" which are regulatory provisions. None of those sections is aimed at conferring rights on the subcontractors, but are all aimed at protecting the public and the awarding authority.

*Id.* at 517–18. *Southern California Acoustics Co. v. C. V. Holder, Inc.*, 71 Cal.2d 719, 79 Cal.Rptr. 319, 456 P.2d 975 (1969), involved the same statute and concerned a subcontract bid offer submitted to a general public works contractor for the acoustical portion of a public school construction

project. When the school district substituted another subcontractor for the named subcontractor, he sought damages for breach of contract, in addition to other damages. After rejecting the argument that utilizing a bid in submitting a prime contract bid is an acceptance, that court held, "[t]he listing by the general contractor of the subcontractors he intends to retain is in response to statutory command [citation omitted] and cannot reasonably be construed as an expression of acceptance." Id., 79 Cal.Rptr. at 322, 456 P.2d at 978. *See also, Norcross v. Winters*, 209 Cal.App.2d 207, 25 Cal.Rptr. 821 (1962); *Western Concrete Structures Co. v. James I. Barnes Constr. Co.*, 206 Cal.App.2d 1, 23 Cal.Rptr. 506 (1962).

The purpose of I.C. § 67–2310 was "to invite effective competition, prevent fraud, and to secure subcontractors who were capable of satisfactorily performing the work and furnishing supplies at the lowest overall cost." *Neilsen*, 96 Idaho at 766, 536 P.2d at 1116. Although I.C. § 67–2310 requires public works contractors to state their specialty subcontractors, we hold that the act did not mean to confer legal contractual status on the subcontractor so named. The purpose of I.C. § 67–2310 was not to modify long existing contract principles. Therefore, the trial court was correct in holding that there was not a breach of contract when the parties did not intend to be bound until the execution of a formal contract. Accordingly, this portion of the district court's judgment is affirmed.

## II

Appellant next contends that the facts alleged support a claim based on fraudulent misrepresentation and that genuine issues of material fact exist that preclude summary judgment. Appellant alleges in his complaint that respondent had misrepresented his license status in submitting the subcontract bid and that such statements were known to be false or reasonably should have been known to be false.

In general, a party alleging a cause of action based on fraudulent misrepresentation must prove the following nine elements:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Fowler v. Uezzell*, 94 Idaho 951, 500 P.2d 852 (1972); *King v. H. J. McNeel, Inc.*, 94 Idaho 444, 489 P.2d 1324 (1971); *Gillingham v. Stadler*, 93 Idaho 874, 477 P.2d 497 (1970); *Walker v. Nunnenkamp*, 84 Idaho 485, 373 P.2d 559 (1962).

In the instant case, the statements contained in respondent's submitted subcontract bid were not false. The bid not only correctly noted that respondent then held a Class AA license, but also correctly stated that respondent had been cleared for a Class AAA license. The subcontract bid did not state that respondent held a Class AAA license and, therefore, did not contain a material false representation.

Appellant, however, testified in his deposition that prior to submitting the prime contract bid naming respondent as the plumbing and mechanical subcontractor, he contacted Bruce Siqueiros, respondent's son and business manager, to ascertain respondent's licensing status. Appellant stated that young Siqueiros said that respondent had been issued a Class AAA license and would adhere to the submitted subcontract bid. Appellant further testified in his deposition that Bruce Siqueiros stated that the license was being mailed to respondent and that respondent had received prior approval from the state licensing board to submit a subcontract bid on the project.

On summary judgment, evidence in favor of the party opposing the motion is to be liberally construed, together with all reasonable inferences from the evidence submitted. *Farmer's Insurance Company of Idaho v. Brown*, 97 Idaho 380, 544 P.2d 1150

(1976). Thus viewed, several issues of material fact are present: whether Bruce Siqueiros' statements were actually made and communicated to appellant; whether Bruce Siqueiros' statements can be imputed to respondent; whether the false statements were either known to be false or made without any knowledge of their truth or falsity. These issues of fact precluded summary judgment. Accordingly, the judgment of the district court is reversed on this basis and remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part. No costs allowed.

DONALDSON and BAKES, JJ., concur.

SHEPARD, C. J., dissents without opinion.

BISTLINE, Justice, specially concurring.

I concur with the majority's conclusion that the summary judgment should be reversed. My views in the contractual count, however, differ from those of the majority and it is appropriate that they be set forth.

For certain this is an unusual case. Unless one adopts the theory that under the "naming statute" Mitchell's use of the Siqueiros bid was a conditional acceptance of that bid, needing only an award of the general contract to Mitchell to ripen into a full-bloom contract, Mitchell would seem to be without a contractual remedy. If it is the law, however, that Siqueiros, while not contractually bound, is legally precluded from withdrawing his bid for a reasonable period of time after Mitchell relies upon it in making his own bid for the general contract, it would seem necessarily to follow that there is indeed *some* type of legal relationship between these transacting parties. Here, no sooner was Mitchell awarded the contract, than he was precluded from going through the formality of giving notice of acceptance by the singular fact that Siqueiros turned out to be improperly licensed. I think it could be successfully argued that the legal relationship is such that Mitchell has a right to hold Siqueiros accountable for breach thereof, in which event, Siqueiros, though unable to work on the project, is estopped from defending on the basis that he is not properly licensed— provided all of the elements of estoppel *in pais* can be established. Having submitted a bid to do work that only a properly licensed subcontractor can legally perform, he is not to be heard contending that his improper license is an excuse for his inability to live up to his bid.

Because I see that the majority's discussion may result in uncertainty in the law of construction industry bidding and contract formation, some clarification is required. The classic doctrine of construction industry contract formation was stated in *James Baird Co. v. Gimbel Brothers*, 64 F.2d 344 (2d Cir. 1933). In that case, a subcontractor had, by mistake, underestimated his bid and, upon discovering the mistake, attempted to revoke it. Meanwhile, the general contractor had relied on the bid in submitting his own bid and had been awarded the contract. Judge Learned Hand held that the subcontractor was free to revoke his bid because no consideration had as yet been given; the subcontractor's bid was only an offer to form a bilateral contract and did not become binding until the general contractor accepted it by a return promise. Thus, as the majority correctly notes, the principle became enshrined that the general contractor's use of the subcontractor's bid does not, without more, amount to acceptance.

The result of this holding in *James Baird* was that the legal relationship existing between the general and the sub from the time the general contractor receives bids until the time he formally accepts one, was left largely undefined and the parties thereto were left largely unprotected. *See Note: Another Look at Construction Bidding and Contracts at Formation*, 53 Virginia L.Rev. 1720 (1967). This unsatisfactory situation prevailed until 1958 when the California Supreme Court handed down its landmark decision in *Drennan v. Star Pacing Co.*, 51 Cal.2d 409, 333 P.2d 757 (1958). That case involved another subcontractor's attempt to withdraw his mistaken bid after the general

had used it in winning the main contract but before he could communicate his formal acceptance to the sub. Judge Traynor, relying upon the doctrine of promissory estoppel, Restatement of Contracts, § 90,[1] held that because the subcontractor, in submitting a bid, knows that the general contractor will rely on it in drawing up his own bid, justice requires that the subcontractor keep his offer open long enough for the general to accept it after being awarded the main contract.

It is important to note the precise theory, effect and function of the doctrine of promissory estoppel. Analytically, the doctrine treats the justifiable reliance of the general contractor as a substitute for the requirement of consideration. The effect is to create an option contract: the law treats the subcontractor's bid as containing a subsidiary promise to hold his offer irrevocable for a reasonable length of time.[2] The doctrine functions only to protect *the general* by preventing a subcontractor who discovers he has made an improvident offer from withdrawing it once the general had relied upon it to his detriment.

The result of *Drennan* has been to alleviate one-half of the injustice in post-award dealings between general contractors and subcontractors. An Asymmetry remains. The general is fully protected but the sub remains vulnerable if the general, after winning the bid, engages in the unethical practice of bid shopping (using the low bid already received to pressure other subcontractors into submitting even lower bids). Despite universal disapproval by the commentators, this would appear to be the present state of the law in construction industry contracts. It is therefore important to distinguish—and the majority opinion does not do so—the body of case law in which the general sues the sub from that in which the sub sues the general. The rights of the two parties in the post-award situation are quite different.

It is at this point that attention may properly focus on naming statute provisions. *In the limited context of public works contracts*, a naming statute presents a possible avenue of redress for subcontractors. The general contractor, of course, needs no such redress because he is already fully protected by the doctrine of promissory estoppel. In this situation, a court may wish to construe the state's naming statute so as to provide a similar "lock-in" protection to the subcontractor who has gone to the expense of preparing his bid in expectation that it will be used by the general if the latter is awarded the main contract. There is much to recommend such a construction and it is one that I would adopt were the question properly before the Court in this case. Such, it seems to me, is the clear meaning of the Idaho naming statute, I.C. § 67–2310, which provides that

> the general contractor shall be required to include in his bid the name, or names and address, or addresses, of the subcontractors who *shall*, in the event the contractor secures the contract, subcontract the plumbing, heating and air-conditioning work, and electrical work under the general contract . . . . (Emphasis supplied.)

Moreover, as we stated in the *Neilson* case, the purpose of our naming statute is "to invite effective competition, prevent fraud, and to secure subcontractors who were capable of satisfactorily performing the work and furnishing supplies at the lowest overall cost." 96 Idaho at 766, 536 P.2d at 1116.

1. "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

2. Under the Second Restatement, courts have available an even more direct approach to the problem:

> An offer which the offeror should reasonably expect to induce action or forbearance of a substantial character on the part of the offeree before acceptance and which does induce such action or forbearance is binding as an option contract to the extent necessary to avoid injustice.
> Restatement (Second) of Contracts § 89B(2) (Tent. Draft No. 2, 1965).

If there is no "lock-in" provision, then the general is free, after winning the bid, to engage in bid shopping with all its attendant evils. Competition is reduced because reputable subs will not submit bids if they know they will not be honored. Honest general contractors are put at a competitive disadvantage because others can submit artificially low bids in the knowledge that they intend to bid shop after the contract is awarded. A subcontractor is motivated to submit a padded or artificially inflated bid in the knowledge that it may be driven down later by an unscrupulous general. Finally, a sub may face the Hobson's choice of either doing the job at a profit margin lower than he had anticipated or cutting corners in quality so as to recoup the losses inflicted upon him. *See* Comment: *Bid Shopping and Peddling in the Subcontract Construction Industry,* 18 U.C.L.A. L.Rev. 389 (1970). I would hold, therefore, that Idaho's naming statute should be construed so as to protect the public's interest in honest, competitive bidding and safe, reputable work by guaranteeing that the subcontractor named be the one who performs the work, in the event the naming general secures the contract.

Such is the position which has evolved in California. There, as the majority correctly notes, a district court of appeals once held that the naming statute served only to regulate relations between the general and the awarding authority, leaving undisturbed the common law relations between generals and subs. *Klose v. Sequoia Union High School Dist.,* 118 Cal.App.2d 636, 258 P.2d 515 (1953). Contrary to what is implied by the majority opinion, however, the Supreme Court of California later reached a different result under a different statute. In *Southern Cal. Acoustics Co., Inc. v. C. V. Holder, Inc.,* 71 Cal.2d 719, 79 Cal.Rptr. 319, 456 P.2d 975 (1969), Justice Traynor reiterated the common law doctrine that the mere use of a subcontractor's bid does not, without more, bind the general to its acceptance. He held further that a subcontractor could not argue a reverse promissory estoppel so as to force the general to accept the sub's bid because of the sub's

own detrimental reliance by incurring expenses in preparation of the bid. Nonetheless, the subcontractor was not left remediless. Justice Traynor held that the subcontractor's complaint stated a cause of action based upon violation of the naming statute when the general attempted to replace the named sub with one who was willing to undercut the original sub-bid. The approach of the California Supreme Court, it seems to me, is sound and deserves adoption by this Court.

Again, I repeat, the provision is not applicable to the facts of this case, where we are not presented with allegations of bid shopping or of an attempt, by either party, to renege on an enforceable promise.