GROSS, J.
In this case between a subcontractor and a general contractor, we reverse a final judgment for the subcontractor because the parties’ dealings did not give rise to an enforceable contract.
Florida Blacktop, Inc., an asphalt paving subcontractor, sued West Construction, Inc., a general contractor. The essence of Blacktop’s complaint was that, even though West used its bid to secure a project contract with the Village of Royal Palm Beach, West contracted with another to perform the work.
Florida Blacktop’s complaint asserted three causes of action: breach of oral contract, promissory estoppel, and unjust enrichment, which is also called a contract implied in law. See Commerce P’ship 8098 Ltd. P’ship v. Equity Contracting Co., *303 Inc., 695 So.2d 383, 386 (Fla. 4th DCA 1997). The case went to a jury trial. An issue of fact to be decided by the jury was whether there was a contract between the parties. In a blended jury instruction, the jury was told about an express oral contract, where an agreement is arrived at by words. See id. at 385. Also, without objection, the jury was instructed about a contract implied in fact, where an agreement “is not put into promissory words with sufficient clarity, so a fact finder must examine and interpret the parties’ conduct to give definition to their unspoken agreement.” See id. By answering an interrogatory verdict, the jury found that Blacktop and West “enter[ed] into an oral agreement” that West would use Blacktop “as its asphalt paving contractor if’ West “was awarded the Project” by Royal Palm Beach.[1] The jury also found that West breached that “oral contract” and awarded damages. Thus, given the way the jury was instructed and the structure of the verdict form, the jury’s finding of an “oral contract” could have been based on an express oral contract, a contract implied in fact, or both.
On appeal, West argues that, when “reviewing the evidence in a light most favorable to [Blacktop], there [was] no competent evidence creating an oral agreement,” so that the trial court should have granted its motion for directed verdict. Because of the way the case was submitted to the jury, our inquiry must focus on whether either an enforceable oral contract or contract implied in fact was formed between the parties.
Evidence at Trial[2]
The Village of Royal Palm Beach initiated a public competitive bidding process, inviting contractors to submit bids in connection with the construction of a building. West decided to compete for the project and invited subcontractors to submit bids for parking lot and asphalt work. Blacktop submitted a “Proposal/Contract” offering to do the paving for a unit price of $14.10, but reserving the right to alter its price due to changes in material costs.
Page four of the proposal contained this preprinted, small print clause:
Florida Blacktop, Inc. has devoted time, money and resources toward the preparation of this bid and as consideration therefore itf’Js submitting this bid to “buyer" with the express understanding and agreement of the parties that in the event the “buyer" in any way uses Florida Blacktop, Inc.’s bid such as figures contained therein for purposes of shopping the bid with third parties and/or divulging information contained in the bid to third parties similarly competing with Florida Blacktop, Inc. for the work at issue and/or incorporating any portion of Florida Blacktop, Inc.’s bid in correspondence with third parties competing or in any way involved with the construction work on the project at issue such action(s) shall in all instances constitute acceptance of Florida Blacktop, Inc.’s bid and shall create a binding contract between the parties consistent with the bid documents.
(Emphasis added). Without explanation or elaboration, the president of Blacktop vaguely testified that this clause was the *304 “industry standard,” meaning he understood the clause to mean that, if West used Blacktop’s bid and got the job, “a contractual agreement” arose. Although Blacktop’s “Proposal/Contract” had places for signatures for both Blacktop and West, neither party signed the document. There was no evidence that West orally agreed to the pre-printed paragraph of the proposal quoted above. There was no evidence that West, either orally or in writing, accepted Blacktop’s proposal. The parties never entered into a written contract.
Thereafter, West submitted its bid to the Village and was notified that it was the lowest bidder. West then furnished the Village with a list of proposed subcontractors and suppliers, indicating that $165,259.93 was attributable to asphalt paving work, which would be performed by Blacktop. Even though Blacktop sent a letter to West thanking it for the work, West never discussed the project with Blacktop, taking the position that Blacktop had been listed as a subcontractor by accident. West hired a different company to do the paving work.
The trial court denied West’s motions for directed verdict and submitted the case to the jury on the blended contract theory described above.

Discussion

For there to be an enforceable contract, “there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained.” Savoca Masonry Co., v. Homes & Son Constr. Co., 112 Ariz. 392, 542 P.2d 817, 819 (1975). A subcontractor’s bid is “nothing more than an offer to perform the subcontract under specified terms.” Corbin-Dykes Elec. Co. v. Burr, 18 Ariz.App. 101, 500 P.2d 632, 633 (1972). The bid does not evolve into a contract until it is accepted by the general contractor; “no contract is formed when a bid is made pursuant to an invitation to bid.” Hoon v. Pate Constr. Co., 607 So.2d 423, 426 (Fla. 4th DCA 1992). Acceptance of an offer may be by the words used or by “other manifestations of intent having reference to the contract.” Corbin-Dykes, 500 P.2d at 634.
Here, there was no express oral or written acceptance of Blacktop’s bid. If there was an acceptance by West, it must be found in a contract implied in fact by evaluating the circumstances under an objective standard. See Holman Erection Co. v. Orville E. Madsen & Sons, Inc., 330 N.W.2d 693, 695 (Minn.1983). “It is a settled common law contract principle that utilizing a subcontractor’s bid in submitting the prime or general contract bid does not, without more, constitute an acceptance of the subcontractor’s offer conditioned upon being awarded the general contract by the awarding authority.” Id. at 696 (quoting Mitchell v. Siqueiros, 99 Idaho 396, 582 P.2d 1074, 1077 (1978)); see also Merritt-Chapman & Scott Corp. v. Gunderson Bros. Eng’g Corp., 305 F.2d 659, 662-63 (9th Cir.1962) (“At the outset, it is clear that in Washington [state] use of a bid by a prime contractor is not the legal equivalent of acceptance.” (citation omitted)). West’s mere use of Blacktop’s bid in submitting its bid did not constitute an acceptance.
Nor did West’s use of Blacktop’s bid amount to a manifestation of its assent because of the preprinted paragraph quoted above. An offeree has a right to not reply to offers. Columbia Malting Co. v. Clausen-Flanagan Corp., 3 F.2d 547, 551 (2d Cir.1924). Unless the offeree agrees in advance, the offeror cannot, by the offer, define the form and manner of the offeree’s acceptance. See id. Thus, “ ‘[a]n offer made to another, either orally or in writing, cannot be turned into an agree *305 ment because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent, for the offerer cannot prescribe conditions of rejection so as to turn silence on the part of the offeree into acceptance.’ ” Leslie v. Brown Bros. Incorporation, 283 P. 936, 942 (Cal.1929) (quoting 13 C.J. Contracts § 74 (1917), available at http://bit.ly/HPQfOY).
Here, West never signed the proposal or agreed to any of its terms, in particular the terms in the preprinted paragraph. West’s silence in response to the preprinted paragraph was not acceptance of its terms for the purpose of the formation of a contract. The vague, bare statement that the proposal was consistent with “industry standard” and, also, “consistent with previous business opportunities with West” fails to establish a custom and usage or a previous course of dealing, pursuant to which West’s silence could be understood as acceptance of the proposal’s terms.[3]
This case is distinguishable from W.R. Townsend Contracting, Inc. v. Jensen Civil Construction, Inc., 728 So.2d 297 (Fla. 1st DCA 1999), a case involving the trial court’s dismissal of a subcontractor’s complaint for failure to state a cause of action. The first district found that the subcontractor had adequately pleaded an express contract where the subcontractor only agreed to provide a bid calling for labor and materials at a fixed cost because the general contractor promised to contract with the subcontractor subject to two contingencies: that the subcontractor’s price was the lowest price at the time of the bid and the general secured the construction contract. Id. at 301. Here, there was no such express contract and Blacktop “merely submitted a subcontractor’s potential price or bid.” Id. This was not a case where Blacktop agreed to bid “only after receiving the general contractor’s promise to accept the bid if it were the low bid and if the general contractor were awarded the prime contract.” Elec. Constr. & Maint. Co., v. Maeda Pac. Corp., 764 F.2d 619, 621 (9th Cir.1985). Also, unlike in W.R. Townsend, there was no unjust enrichment claim in this case that turned on the subcontractor’s provision of a guaranteed bid that allowed West to be “the low bidder on the project.” 728 So.2d at 303.
Based on the foregoing, we hold that the trial court erred in denying West’s motions for directed verdict. This result is consistent with the equities of the bidding process identified by the Minnesota Supreme Court:
[T]he nature of the bidding process compels allowing the general sufficient leeway to maintain its flexibility in executing subcontracts and selecting the subcontractors it will hire for a project. ...
[[Image here]]
... The subcontractors have the luxury of preparing their bids on their own timetable, subject only to the deadline for submitting their bids to the general contractors. The same bid goes to all the general contractors and covers the same work. The generals, on the other hand, are dealing with all the various construction aspects of the project and *306 with numerous potential subcontractors. They compile their bids, as the various subcontractor bids are received, within a few hours of the deadline for submission of the prime bid. Specifics are necessarily given less than thorough consideration and are left for future negotiations. Finally, the lowest dollar amount bidder is not always the one chosen to do the work or the one listed as the potential subcontractor. Reliability, quality of work, and capability to handle the job are all considerations weighed by the general in choosing subcontractors. MBE regulations requiring an effort to use a percentage of minority contractors are another potential consideration.
Binding general contractors to subcontractors because a particular bid was listed in the general bid or was utilized in making the bid would remove a considerable degree of needed flexibility.
Holman Erection, 330 N.W.2d at 698-99.

Reversed and remanded for the entry of judgment for the defendant.

MAY, C.J., and DAMOORGIAN, J., concur.

. The promissory estoppel count was not submitted to the jury.

. In reviewing the denial of a motion for directed verdict, we view the evidence in a light most favorable to Blacktop, the non-moving party, and we "must affirm the denial of a motion for directed verdict if any reasonable view of the evidence could sustain a verdict in favor of the non-moving party." Meruelo v. Mark Andrew of Palm Beaches, Ltd., 12 So.3d 247, 250 (Fla. 4th DCA 2009).

. "Custom or usage is defined as an habitual or customary practice, more or less widespread, which prevails within a geographical or sociological area.” Corbin-Dykes, 500 P.2d at 634. Although custom and usage or course of dealings may be considered for the purpose of deciding whether a contract inl-plied in fact has been formed, see Indus. Elec-Seattle, Inc. v. Bosko, 67 Wash.2d 783, 410 P.2d 10, 17-18 (1966), the testimony must consist of more than conclusory statements, see Cinghina v. Racik, 647 So.2d 289, 291-92 (Fla. 4th DCA 1994).