16 Cal.App.4th 577 (1993)
20 Cal. Rptr.2d 200
LITON GENERAL ENGINEERING CONTRACTOR, INC., Plaintiff and Respondent,
v.
UNITED PACIFIC INSURANCE, Defendant and Appellant.
Docket No. A053997.
Court of Appeals of California, First District, Division Two.
June 11, 1993.
*582 COUNSEL
Jewell J. Hargleroad for Defendant and Appellant.
Miller, Morton, Caillat & Nevis and Stevan C. Adelman for Plaintiff and Respondent.
OPINION
KLINE, P.J. 

Introduction
United Pacific Insurance (UPI) appeals from a judgment of the Contra Costa County Superior Court, ordering UPI as surety to pay attorney fees incurred by respondent subcontractor Liton General Engineering Contractor, Inc. (Liton), in its action against UPI on a public works payment bond, where the bulk of fees were incurred in arbitration of Liton's contractual dispute with the general contractor, Bay Cities Paving & Grading, Inc. (Bay Cities). UPI contends the fee award must be reversed claiming: (1) The statutory right to attorney fees applies only to actions on the bond to which the surety is a party and the arbitration proceeding satisfied neither requirement; (2) because UPI was not a party to the arbitration, it was denied due process by the fee award; (3) full payment of the arbitration award by Bay Pacific exonerated UPI; (4) Liton waived its right to a fee award in its arbitration agreement with Bay Cities.
We conclude that the strong policy of this state favoring mechanics, laborers and materialmen, as reflected in statutes mandating the award of attorney fees to the prevailing party in an action on a public works payment bond, requires award of fees in this case. To hold otherwise would undermine both the fee statutes and the policies underlying those statutes.

Facts and Procedural History
In 1983, Bay Cities entered into a contract with the California Department of Transportation (Caltrans) for bridge and highway construction in Hercules, California. UPI issued a payment bond in the sum of $1,600,440.45 on *583 behalf of Bay Cities as required by statute. (Civ. Code, § 3247.) Thereafter, as general contractor, Bay Cities entered into a subcontract with Liton, wherein Liton took responsibility for the bridge work portion of the project. The subcontract required Bay Cities and Liton to arbitrate any disputes between them arising out of the contract as "a condition precedent to any right of legal action." It further provided that each would bear its own legal fees in connection with such arbitration. As the project neared completion, Caltrans assessed Bay Cities liquidated damages of $87,920 based on a delay of 157 calendar days. Bay Cities attributed the delay to Liton and another subcontractor and withheld $77,840 of its final payment to Liton. Subsequently, Caltrans released $26,880 to Bay Cities, which sum it passed through to Liton.
Bay Cities pursued administrative proceedings before Caltrans's board of Review. In 1986, prior to completion of the proceedings before Caltrans, Liton filed its action against Bay Cities for breach of contract and common counts and against UPI for recovery on the public works payment bond. The complaint prayed for recovery of attorney fees against UPI only. Bay Cities and UPI filed responsive pleadings. Bay Cities moved to stay the entire action and to require Liton to arbitrate its dispute with Bay Cities as part of the pending arbitration proceeding between Bay Cities and Caltrans. In its answer to Liton's complaint, UPI raised an affirmative defense that the action was subject to abatement until completion of the arbitration. Over Liton's opposition, the trial court ordered the action stayed and compelled Liton to arbitrate its claims against Bay Cities.
Following a lengthy arbitration proceeding, the arbitrator awarded Liton the entire amount of its claim of $46,480 of the liquidated damages withheld, plus interest. Liton was also awarded $5,000 in settlement proceeds paid by Caltrans to Bay Cities for railroad flagging charges. Liton acknowledged that its subcontract with Bay Cities required each party to bear its own attorney fees and costs, and the arbitrator so ordered. An order confirming the arbitration award was entered, and the court ordered the stay of the action lifted. On October 8, 1990, judgment was entered against Bay Cities. Bay Cities paid Liton the entire amount of the judgment and an acknowledgement of full satisfaction thereof was filed on October 10, 1990.
After the stay was lifted, Liton moved for summary judgment against UPI, claiming that there were no disputed issues of material fact and that as a matter of law UPI was liable for the attorney fees Liton incurred in the arbitration proceeding against Bay Cities. UPI filed a cross-motion for summary judgment, agreeing that there were no disputed issues of material *584 fact, but arguing that as a matter of law Bay Cities' payment of the underlying award exonerated UPI from any liability for attorney fees. Following briefing and a hearing, the trial court granted Liton's motion for summary judgment, denied UPI's cross-motion, and ordered summary judgment in favor of Liton. Following hearing on UPI's motion to tax costs, a judgment was entered awarding Liton total attorney fees and costs of $93,028.92. UPI filed a timely appeal.

I.
(1) Under the principle of sovereign immunity, mechanics' liens may not be asserted on government projects. (Cal. Mechanics' Liens and Other Remedies (Cont.Ed.Bar 2d ed. 1988) § 3.1, p. 118.) The only remedies available on public works are stop notices (Civ. Code, §§ 3179-3214) and actions on public works payment bonds (Civ. Code, §§ 3247-3252). Every original contractor to whom a public entity awards a contract in excess of $25,000 for any public work must, before beginning the work, file a payment bond with the public entity awarding the contract. (Civ. Code, § 3247.) The payment bond must be executed by "good and sufficient sureties." (Civ. Code, § 3096.) It must also provide "in case suit is brought upon the bond, a reasonable attorney fee, to be fixed by the court." (Civ. Code, § 3248, subd. (b).)
(2) In addition to protection of the public entity from liability for a defaulting contractor, the purpose of the surety bond is to provide a distinct remedy to public works subcontractors and suppliers of labor or materials to public works projects. "[T]he surety's labor and materials bond (payment bond) has uniformly been held to constitute a primary and direct obligation of the surety to the subcontractors and materialmen without reference to the liability of the public works contractor  the principal on the bond. [Citations.]" (Sukut-Coulson, Inc. v. Allied Canon Co. (1978) 85 Cal. App.3d 648, 654 [149 Cal. Rptr. 711].) Hence, Civil Code section 2807 holds a surety liable immediately upon default of its principal. Moreover, an action against the surety on the payment bond may be maintained separately from and without the filing of an action against the public entity and without the filing of a stop notice. (Civ. Code, § 3250.) Finally, Civil Code section 3250 mandates the award of attorney fees to the prevailing party in any such action.[1]
(3) This statutory right to attorney fees overrides the general rule that each party bears its own fees, unless otherwise provided by contract. (Code Civ. Proc., § 1021.)

*585 II.
(4) We conclude Liton may recover fees incurred in its arbitration with Bay Cities because that proceeding was an integral aspect of its action on the bond. The award of fees does not, in our view, violate UPI's right to due process of law.

A.
Liton filed its action in the superior court against both Bay Cities on the subcontract and UPI on the bond. At the urging of UPI, as well as Bay Cities, and over Liton's strenuous objection, the trial court compelled Liton to complete the arbitration before it was permitted an opportunity to establish UPI's liability on the bond. This compulsion, together with the fact that the arbitration agreement did not call for waiver of the statutory right to fees from the surety, is among the reasons we disagree with our dissenting colleague that Liton should be deemed to have "elected" a remedy foreclosing a cause of action against the surety in which fees could be awarded. (Dis. opn., post, at p. 601.) Under the circumstances, successful resolution of the arbitration action was a necessary precursor to and an integral component of a successful outcome in Liton's action against UPI. The court correctly determined that the arbitration fees were incurred by Liton as part of its action on the bond.
UPI contends that the case law supports its contention that fees are not recoverable for the arbitration between Liton and Bay Cities. We do not believe the cases relied upon by UPI assist in the determination whether the arbitration was part of Liton's action on the bond.
In Acoustics, Inc. v. Trepte Constr. Co. (1971) 14 Cal. App.3d 887 [92 Cal. Rptr. 723], subcontractor Acoustics sued the general contractor (Steiny) and the surety (General) in a consolidated action, alleging causes of action for breach of contract by the general contractor and on the payment bond. The general contractor prevailed in the contract action, and the surety prevailed in the action on the bond. The appellate court held that the surety having prevailed in the action on the bond, it was entitled to reasonable attorney fees under former Government Code section 4207, the precursor to Civil Code section 3250. (14 Cal. App.3d at p. 918.) However, the general contractor was not entitled to its attorney fees in defense of the contract *586 action. (Ibid.) The appellate court also held that the award of $100 attorney fees to the surety in the action on the payment bond was inadequate: "Even when it is considered that the work of preparation and trial in representing Steiny in action number 836618 and action number 837741 would be substantially the same as the work of preparation and trial in representing General in the action upon the bond, we are of the opinion, based upon the record before us, that the allowance of the sum of $100 as attorneys' fees on the bond action is inadequate. Such an award appears to place substantially the entire obligation to pay the attorneys' fees upon Steiny. If one firm of attorneys had represented Steiny on the contract action and another firm of attorneys had represented General upon the bond action, General would have been entitled to recover reasonable attorneys' fees under section 4207 of the Government Code without regard to the allocation of the value of their services, part to the contract action and part to the bond action, as apparently was done by the trial court here. If such actions had been brought separately and different counsel had been employed in each action the same result would follow." (Ibid.)
Acoustics actually supports the judgment here by recognizing a statutory right to reasonable attorney fees by the prevailing party in an action on the bond even though work in preparing the contract action is substantially the same as work on the bond action. Moreover, in Acoustics, although the same attorneys represented the general contractor and the surety (as was also the case here), there was a clear division between those causes of action on contract and those on the bond. The general contractor unsuccessfully sought to recover fees from Acoustics for defending the contract action. Here, Liton seeks fees as against the surety (not from the general contractor) as the prevailing party in the action on the bond. Acoustics does not determine the question presented here: whether the arbitration, under the circumstances, was part of the action on the bond against UPI.
Nor does Western Concrete Structures Co. v. James I. Barnes Constr. Co. (1962) 206 Cal. App.2d 1 [23 Cal. Rptr. 506], address this question. In Western, we affirmed a judgment awarding plaintiff subcontractor on a public works project (Western) damages against the general contractor (Barnes) on claims not covered by the surety bond and also awarding attorney fees to the surety (Seaboard) against the subcontractor on the ground that the statute of limitations had run on claims against the surety covered by the bond. Both Barnes and Western appealed, each contending it was the prevailing party within the meaning of Government Code section 4207. We held that substantial evidence supported the judgment and fee award, ruling that the "prevailing party" as used in former Government Code *587 section 4207, was intended to be either the claimant who is successful in the action as against the surety or the surety who is successful against a claimant bringing an action against it under that section. (206 Cal. App.2d at p. 10.) Seaboard became entitled to fees when it prevailed under the only two counts (the action on the bond) to which it was a party. Western's fee entitlement depended upon its prevailing in the counts under Government Code section 4207 on the bond, and it did not prevail on those counts. (206 Cal. App.2d at p. 10.) Barnes, the general contractor, was not a "prevailing party" as used in the statute and was precluded from recovering its fees. (Id., at p. 11.)
Nothing in Western contradicts our conclusion that under the circumstances of the present case arbitration was an integral part of the action on the bond and that Liton was therefore statutorily entitled to its fees against UPI.

B.
(5) UPI argues that the fee award violated its right to due process as it was never a party to the arbitration proceeding. At the time this action was proceeding, there was no California authority holding that UPI, which was not a party to the subcontract between Bay Cities and Liton, could be compelled to arbitrate.[2] However, Liton did not seek to enforce the judgment obtained in the arbitration action against UPI. Rather, once the stay was lifted, Liton moved for summary judgment against UPI contending that as a matter of law, UPI was obligated under Civil Code section 3250, for attorney fees and costs incurred in the arbitration proceeding against Bay Cities. It is important to our analysis that UPI failed to raise any defenses of fact or law at an opportune time. In fact, UPI conceded there were no disputed issues of *588 material fact and vigorously argued in its cross-motion for summary judgment that as a matter of law it was exonerated from any liability to Liton for fees. Had any issues of fact existed involving any of the eight affirmative defenses asserted by UPI in its answer to Liton's complaint prior to stay of the proceedings, UPI had ample opportunity to raise them in opposition to the summary judgment motion.
UPI contends that the award of fees is unfair because had Liton lost in the arbitration proceeding, UPI would have had no right to collect fees, although the right to fees under Civil Code sections 3248 and 3250 is reciprocal. We reject UPI's premise. Had Liton lost in the arbitration proceeding, UPI could have moved for summary judgment on the issue of its own liability and, assuming it prevailed, would have been entitled under Civil Code section 3250 to recover from Liton its attorney fees incurred in connection with the summary judgment. Because UPI was not a party to the arbitration proceedings, it incurred no fees in that portion of the action and its fee award would be far less than Liton's. However, the disparity in incurable fees does not undermine the reciprocity provisions of Civil Code section 3250.
(6) We also reject UPI's contention that Civil Code section 3250 requires an apportionment of fees spent by Liton in arbitrating with Bay Cities and in litigating with UPI. As earlier indicated, Liton was not permitted to establish UPI's liability on the bond without first completing arbitration. The liability of Bay Cities and UPI were so factually interrelated that it would have been impossible to separate the activities involved in the arbitration into compensable and noncompensable time units. Allocation was not required. (Fed-Mart Corp. v. Pell Enterprises, Inc. (1980) 111 Cal. App.3d 215, 227 [168 Cal. Rptr. 525].)
Having determined that the arbitration proceeding was part of the action on the bond under the circumstances here presented, and that Liton did not seek to execute upon the judgment received in the arbitration action against UPI, but rather obtained a separate summary judgment against UPI, affording ample opportunity for UPI to raise factual and legal defenses, we reject UPI's contention that the award of fees contravened Civil Code section 2855.[3]

*589 III.
(7a) UPI's statutory liability for attorney fees in the bond action was not derivative of any fee liability of Bay Cities. The provision of the subcontract between Bay Cities and Liton that each party would bear its own attorney fees simply reiterated the general American rule that each party bears its own fees, except where specifically provided by statute or prior agreement. (Code Civ. Proc., § 1021.) Absent some agreement for fee shifting between Bay Cities and Liton, the general contractor ordinarily would not be liable for attorney fees. The provision in the subcontract acknowledging that Bay Cities and Liton will each bear its own fees in the arbitration was not designed to relieve UPI of its statutory fee liability as the nonprevailing party in the action on the bond and should not be given such an unanticipated effect.
Nor do general statutes describing the relationship between the surety and its principal prevail over the more specific statutes concerning the attorney fees entitlement in litigation on a public works bond.
Civil Code section 2808 provides in relevant part: "Where one assumes liability as surety upon a conditional obligation, his liability is commensurate with that of the principal...."
Civil Code section 2809 provides: "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; and if in its terms it exceeds it, it is reducible in proportion to the principal obligation."
These statutes relating to the position and liability of sureties in general must be harmonized, to the extent possible, with the more specific provisions of Civil Code sections 3248 and 3250.
Civil Code section 3248 requires a public works payment bond to provide that, if the original contractor fails to pay any of the persons named in Civil Code section 3181 with respect to work or labor performed under the contract, that "the sureties will pay for the same, and also, in case suit is brought upon the bond, a reasonable attorney's fee, to be fixed by the court." (Civ. Code, § 3248, subd. (b), italics added.)
Civil Code section 3250 directs that the "court shall award to the prevailing party a reasonable attorney's fee" in any action on the payment bond in a public works context.
The more specific provisions of Civil Code sections 3248 and 3250 establishing a right to recover attorney fees in public works payment bond *590 litigation govern. (8), (7b) As our Supreme Court recently reiterated, "`A specific provision relating to a particular subject will govern a general provision, even though the general provision standing alone would be broad enough to include the subject to which the specific provision relates.'" (Woods v. Young (1991) 53 Cal.3d 315, 325 [279 Cal. Rptr. 613, 807 P.2d 455], quoting People v. Tanner (1979) 24 Cal.3d 514, 521 [156 Cal. Rptr. 450, 596 P.2d 328]; Code Civ. Proc., § 1859.) The statutes specifically pertaining to the payment of attorney fees clearly contemplate that the surety may be liable for amounts owed by the original contractor and in addition for attorney fees beyond that sum, as its own direct liability. Moreover, any contention that fees may be awarded against the surety only when the principal is liable for fees would undermine the statutory scheme for shifting fees in public works actions, as it would preclude recovery of fees actually incurred in actions against the surety on the payment bond, except in those unlikely situations in which the general contractor has agreed to pay the attorney fees of a prevailing subcontractor. (It is because of this apparent legislative intent that we reject the view of our dissenting colleague that a subcontractor who arbitrates a dispute with a general contractor can be deemed to have "elected" to forego entitlement to fees under Civil Code section 3250.) Such an interpretation would eviscerate the fees provisions of Civil Code sections 3250 and 3248 and conflict with the explicit mandate of these statutes. Hence, in an action on the payment bond, it is clear that fees not only may be awarded, but must be awarded to the prevailing party regardless whether the principal would be liable for such fees either contractually or under some other statute.

IV.
(9) Relying upon the general suretyship maxim that performance of the principal obligation exonerates a surety (Civ. Code, § 2839),[4] UPI contends that Bay Cities' payment in full of the judgment upon confirmation of the arbitration award discharged any obligation it may have had to pay attorney fees.
The crux of UPI's argument is that Bay Cities was never in default, as arbitration was a condition precedent to the accrual of Liton's cause of action. Therefore, reasons UPI, because Bay Cities paid Liton the principal and interest due promptly after the arbitration award and before the stay was lifted, its performance exonerated UPI.
This argument ignores the plain language of Civil Code section 2807, that "A surety who has assumed liability for payment or performance is liable to *591 the creditor immediately upon the default of the principal, and without demand or notice." That arbitration may have been a condition precedent to Liton's right to maintain its action against Bay Cities does not establish that there was no default by Bay Cities. The initial refusal of Bay Cities to pay the amount due triggered the surety's obligation under the payment bond. At that point, UPI became liable to Liton not only for the amount wrongfully withheld but also, by statute and under the provisions of its bond, for any fees Liton might incur in pursuing its action on the payment bond, in the event Liton ultimately prevailed in that action. (Civ. Code, §§ 3248, subd. (b), 3250.)
Cases cited by UPI to support its contention that there could be no default until and unless Bay Pacific refused to pay the arbitration award are clearly inapposite. For example, in Charles J. Rounds Co. v. Joint Council of Teamsters No. 42 (1971) 4 Cal.3d 888, 894 [95 Cal. Rptr. 53, 484 P.2d 1397], the failure to pursue arbitration was raised by defendant labor unions as an affirmative defense to suit; Olson v. County of Sacramento (1974) 38 Cal. App.3d 958, 960-963 [113 Cal. Rptr. 664], involved a wrongful discharge action in which the issue was when plaintiff's cause of action accrued for statute of limitations purposes. The Olson court relied upon the judicial policy underlying decisions tolling the statute of limitations during the pendency of interrelated administrative proceedings to hold the limitations period had not expired.
Bay Cities defaulted when it wrongfully withheld the contract balance owed at the time it came due. The arbitrator recognized this when he awarded Liton prejudgment interest against Bay Cities in addition to the principal amount of its claim. The trial court also relied upon this fact in awarding Liton summary judgment.
UPI cites language in section 3226 that a condition of recovery is that the claimant "has not been paid the full amount of his claim." (Civ. Code, § 3226.) In so doing, UPI ignores other language of that section, which provides in its entirety: "Any bond given pursuant to the provisions of this title will be construed most strongly against the surety and in favor of all persons for whose benefit such bond is given, and under no circumstances shall a surety be released from liability to those for whose benefit such bond has been given, by reason of any breach of contract between the owner and original contractor or on the part of any obligee named in such bond, but the sole conditions of recovery shall be that [the] claimant is a person described in Section 3110, 3111, or 3112, and has not been paid the full amount of his claim." (Civ. Code, § 3226, italics added.)
*592 As previously discussed, UPI's liability for attorney fees was statutorily based, and did not depend upon any contractual liability for attorney fees by Bay Cities as principal. To interpret the relevant statutes otherwise would undermine the mandatory fee shifting provisions of Civil Code sections 3248 and 3250. Similarly, to conclude that a surety may escape the statutory duty to pay fees in an action on a payment bond when the principal finally pays the amount due to the subcontractor, following protracted and expensive litigation-related proceedings, would also subvert the fee shifting statutes. Such result would make the statutory mandate dependent upon (1) whether the principal was contractually liable to the subcontractor for fees; and (2) whether the principal paid the underlying debt promptly following judgment, regardless of the time, energy and money expended by the subcontractor in obtaining judgment in its action on the bond. To condition application of section 3250 upon either occurrence as a practical matter would vitiate the strong public policy that informs the public works fee shifting statutes.
The fee obligation under Civil Code section 3250 is a separate and primary obligation of the party (surety or claimant) who does not prevail in the action on the bond. Payment of the initial obligation does not exonerate the surety. For example, in Granite Rock Co. v. Freeman (1928) 93 Cal. App. 507 [269 P. 668], the plaintiff was a supplier to defendant contractors on a public work. A public works payment bond was issued pursuant to a predecessor statute to Civil Code section 3250 (Stats. 1919, ch. 303, pp. 487-488). After completion of construction, plaintiff sued the original contractors and the bonding company on the bond. While defendants' demurrer was pending, the defendants paid plaintiff the principal of the sum due, but did not pay accrued interest or costs. Later, they tendered payment of interest and costs, but did not tender payment of plaintiff's attorney fees. At trial, the court awarded plaintiff judgment for a sum including attorney fees. The defendants appealed, arguing that before the date of trial, they had paid the principal sum claimed, that defendants were therefore "the prevailing party" under former chapter 303, Statutes 1919, and that for this reason fees should not be awarded plaintiff. The appellate court rejected this argument stating: "What with moneys paid to it before trial, and what with moneys obtained by virtue of the judgment, the plaintiff recovered every element it sued for. It had to fight for each element. It was `the prevailing party' within the meaning of those words as used in the statute to the same extent and degree that it would have been if the principal sum had not been paid before answer filed but had been withheld and had been included as a part of the judgment itself. The difference between this and any other action was merely in the procedure, but nothing was obtained without a contest, in which it prevailed." (Granite Rock Co. v. Freeman, supra, 93 Cal. App. at p. 508.)
*593 So, too, Liton has recovered every element of its claim, but only after fighting for every element. Ultimate payment by Bay Cities does not deprive Liton of its right to attorney fees as the prevailing party in the action on the payment bond.

V.
(10a) UPI contends Liton waived any right to collect statutory attorney fees by agreeing in the subcontract to arbitrate disputes between itself and Bay Cities and by agreeing that each party would bear its own costs and attorney fees incurred in such arbitration. We reject this contention.
(11), (10b) "Waiver is the voluntary relinquishment of a known right. [Citation.] To constitute a waiver, it is essential that there be ... an actual intention to relinquish [the right] or conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished." (Outboard Marine Corp. v. Superior Court (1975) 52 Cal. App.3d 30, 41 [124 Cal. Rptr. 852].)
Although Liton acknowledged the absence of any right to recover fees against Bay Cities in the arbitration, it neither expressly nor by implication waived its rights under Civil Code section 3250, as a "prevailing party" to recover its attorney fees from UPI.
UPI was not a party to the subcontract. The statutory obligation of the surety to pay fees should it not prevail in an action on the bond is not affected by the terms of the contract between the subcontractor and the original contractor, be it an agreement to arbitrate (Pneucrete Corp. v. U.S. Fid. & G. Co. (1935) 7 Cal. App.2d 733, 739 [46 P.2d 1000]) or an agreement to waive attorney fees as between those two. Liton never acknowledged or agreed to any waiver as against UPI. Indeed, in seeking fees from UPI alone at the outset in its superior court action on the bond, Liton's conduct was inconsistent with any implication of waiver of its right to recover fees against UPI.
We refuse to infer that Liton understood this fee waiver provision, which, as we have explained, was in essence merely a restatement of the usual American rule, to also constitute a waiver of its statutory fee rights vis-a-vis UPI in its action on the public works bond.
*594 We will not read into an arbitration agreement that is silent on the issue an "understanding" that a party is waiving a statutory right to fees.[5] Enforcement of the statute imposes no responsibility on the surety or the general contractor of which they had any reasonable right to think they were relieved. On the contrary, relieving the surety or general contractor of the duty imposed by Civil Code section 3250 would be a windfall that cannot be reconciled with the policy reflected in that statute.
The dissent claims the result we reach will result in a surety being forced to pay attorney fees to subcontractors that have made "inflated and legitimately disputed" claims against contractors, if the contractor and subcontractor ultimately settle their dispute following negotiation or arbitration. (Dis. opn., post, p. 602.) This fear misconstrues our views and is unfounded. (12) Nothing in this opinion suggests a subcontractor is entitled to fees against the surety merely because it prevailed in an arbitration or otherwise settled its claim with the contractor. The subcontractor is entitled to recover fees reasonably incurred in satisfying its claim only when it prevails in its action on the bond. The surety cannot be deprived of its own defenses and those available to the contractor. Should the contractor settle a claim the surety considers defensible, the surety can raise its defenses in the action on the bond. If the surety prevails it can recover its fees from the subcontractor. (Winick Corp. v. Safeco Insurance Co. (1986) 187 Cal. App.3d 1502 [232 Cal. Rptr. 479].)
The judgment is affirmed. Liton is awarded its costs and attorney fees on appeal. (Winick Corp. v. Safeco Insurance Co., supra, 187 Cal. App.3d at p. 1509.)
Smith, J., concurred.
PETERSON, J.[*]
I respectfully dissent.
This case presents important issues of first impression in this state which affect all public (and ultimately private) works of improvement. It concerns the liability of a surety, issuing a public works payment bond, for a subcontractor's attorney fees and costs incurred in recovering an award from the *595 surety's principal in a private and voluntary contractual arbitration, in which each party agreed, and was ordered, to pay its own such expenses, and to which the surety was not a party. It raises the issue of whether such private arbitration is an action "on the payment bond" triggering the surety's liability for such fees and costs in excess of the actual confirmed arbitration award.
The majority opinion upholds an award of attorney fees and costs against the surety on these facts. This result, without precedent, is erroneously reached because the majority:
1. Construes a statute, allowing recovery of attorney fees and costs from a surety only in an action "on the payment bond" (Civ. Code,[1] § 3250), as justifying an award of such fees and costs incurred in an arbitration proceeding which was not an action "on the payment bond";
2. Misinterprets the contractual language of contractor and subcontractor, providing each party shall bear its own attorney fees and costs incurred in arbitration, and by doing so effectively compels payment thereof to the winner;
3. Bases its result on a purported "public policy" rationale void of support from or analysis of the case law and statutes apposite here  and which "public policy" ignores the actual public policy formulated and enacted by the California Legislature favoring the finality of arbitration awards;
4. Interprets statutory language, providing an arbitration award against a principal alone shall not be construed as an award against its surety, to mean the opposite.
In order to fully understand the erroneous reasoning of the lower court, and the majority's new and different reasoning which reaches the same erroneous result, further exposition of the facts is required. I will refer to Liton as "subcontractor," Bay Cities as "contractor," and UPI as "surety."

A. The Contract, the Lawsuit, and the Arbitration

The subcontract of August 31, 1983, between contractor and subcontractor contained the arbitration clause in question, and was signed after surety had issued its payment bond on August 25, 1983, on behalf of contractor, the *596 successful bidder on the California Department of Transporation (Caltrans) job. Section 25 of that subcontract provided that all disputes regarding interpretation or performance of the subcontract be arbitrated by one of two methods;[2] that such arbitration decision by either method "shall be binding and conclusive, ... and shall be a condition precedent to any right of legal action" against the contractor; and that "Each party shall bear the expense of its own arbitrator, witnesses and legal fees. ..." (Italics added.)
The dispute between contractor and subcontractor arose when Caltrans imposed a liquidated damages clause of the prime public works contract on contractor for a delay in performance, and contractor passed a portion of such liquidated damages through to subcontractor by withholding payments to the latter, contending the delay was caused by subcontractor's untimely performance of its subcontract.
By May of 1986, contractor was in administrative negotiations with Caltrans concerning the latter's liquidated damages claim, which on October 6, 1987, became the subject of arbitration between contractor and Caltrans before the California Office of Administrative Hearings (OAH arbitration). (See Pub. Contract Code, §§ 10240-10240.13.)
Subcontractor had, on August 7, 1986, filed its complaint (subsequently amended) in the case at bench, naming contractor and surety as defendants. Those pleadings asserted three causes of action on which subcontractor sought judgment from contractor only, for breach of contract and two common counts. The fourth cause of action sought judgment from surety only by reason of the issuance of its performance bond, alleging, inter alia, subcontractor was entitled to attorney fees and costs from surety expended in prosecuting that cause of action, which it alleged was one "against the payment bond."
Subcontractor made no further appearance in the lower court after August 1986, when its complaint was filed and amended, until it opposed contractor's motion to stay the action for arbitration almost two years later. The complaint[3] insulated subcontractor's fourth cause of action against surety *597 from the defense of the six-month limitations period of section 3249[4] in the event the contractor defaulted in payment ordered by the arbitrator and confirmed in this action.
On contractor's motion, the lower court, on August 23, 1988, stayed the action and ordered subcontractor to "join the currently pending arbitration proceeding between [contractor] and [Caltrans], and administered by the State of California Office of Administrative Hearings [the OAH arbitration],[[5]] if a joinder is granted by the Arbitrator therein. If such joinder is not granted, the parties are to select another arbitrator under the terms of their subcontract." (Italics added.)
Subcontractor never elected or offered to separately pursue its fourth cause of action on the payment bond, either by moving for its severance and exclusion from the stay order or by protesting or objecting to the stay of the fourth cause of action. Contractor's motion for stay, and its memorandum of points and authorities supporting the motion, made no reference to the fourth cause of action or to surety, characterizing the stay as sought in a "classic subcontractor, contractor, owner [Caltrans] dispute." Subcontractor described the "dispute" for which arbitration was sought as one between only subcontractor and contractor: "a straightforward breach of contract action." The issue of surety's liability to subcontractor under the latter's fourth cause of action was not arbitrated or ruled upon by the arbitrator.
After subcontractor thus joined the pending OAH arbitration before arbitrator Robert E. Leslie, contractor and subcontractor jointly concluded their arbitration against Caltrans. OAH jurisdiction over those parties terminated when that government entity thus ceased to be a party to the arbitration dispute. (See Pub. Contract Code, §§ 10240, 10240.5, 10240.6; Cal. Code Regs., tit. 1, §§ 301, subds. (c)-(l), 306, 331, 332.) Subcontractor and contractor, however, then stipulated that Leslie would continue to hear their dispute as their single joint arbitrator,[6] consistent with section 25 of their subcontract; and the parties agree on this appeal that the arbitration award *598 was made under that private arbitration provision, not under Public Contract Code section 10240 et seq.
On April 23, 1990, the arbitrator ruled in favor of subcontractor, awarding it $51,480. He also ruled, inter alia, that "Each party shall bear its own attorney's fees and costs...." (Italics added.)
This final award was thereafter confirmed, in the superior court action which subcontractor had previously filed against contractor and surety. The award thereby obtained the status of a civil judgment (Code Civ. Proc., § 1287.4), requiring subcontractor to bear such arbitration expenses.
Contractor paid subcontractor the full amount of the arbitration award thus reduced to judgment in this action, and subcontractor filed a full satisfaction of that judgment.
Then, strangely enough, subcontractor's subsequent summary judgment motion, seeking payment by surety of attorney fees and costs subcontractor had incurred in the arbitration, was granted. A judgment therefor, generating this appeal, was then awarded against surety for subcontractor's "attorney's fees upon the statutory bond ... $89,789.23, $3,239.69 as and for other costs."

B. The Arbitration Proceeding Between Contractor and Subcontractor Was Not an Action on the Payment Bond Against Contractor's Surety

1. The Lower Court's Decision Violates Section 2855

The lower court found that when the arbitrator's decision in favor of subcontractor established contractor's liability, "[A]t that point ..., it is my view that pursuant to [section] 2827[[7]] [surety] became immediately liable to [subcontractor] under the payment bond. [¶] ... [A]t that very point, [surety] also became immediately liable to [subcontractor] ... for any attorneys fees incurred [in the arbitration proceedings] ... in enforcing the payment bond, ... [and] at that point of time [contractor] breached its ... payment obligations to [subcontractor]. [¶] [Surety] ... became immediately liable to [subcontractor] under the bonds [sic], and then pursuant to Section 3258 became immediately liable, at that point statutorily... for any attorneys fees ... incurred in enforcing the bond." (Italics added.)
*599 The lower court further found surety's "liab[ility] ... under the payment bond" for subcontractor's arbitration attorney fees and costs became fixed immediately on the terms of the final award in the arbitration proceeding without regard to whether a lawsuit against surety was then pending.[8] This conclusion is irreconcilable with the provisions of section 2855, added in 1979: "An arbitration award rendered against a principal alone shall not be, be deemed to be, or be utilized as, an award against [its] surety. [¶] The intent of this legislation is to apply existing law to arbitration awards."[9]
The trial court compounded its error by expanding the arbitration award to require payment by surety of fees and costs incurred in the arbitration which the arbitrator did not order.
If such liability became fixed immediately on the terms of an arbitration award when entered, surety would clearly have no liability here for fees and costs the arbitrator ordered the subcontractor to bear. Under the trial court's reasoning, however, a surety is automatically obligated to pay the attorney fees and costs incurred in an arbitration by the winning party against the surety's principal, a proceeding in which the surety did not participate and was not required to participate, and in which the arbitrating parties had clearly agreed to pay their own such fees and costs.

2. The Majority's Holding Reaches the Trial Court's Result by a Different and Equally Erroneous Route

The majority reaches the trial court's result by finding that subcontractor's lawsuit (which was irrelevant to the lower court's analysis) was filed as an action "on the payment bond" before arbitration proceedings commenced, and was stayed for arbitration so that "successful resolution of the arbitration action was a necessary precursor to and an integral component of a successful outcome in [subcontractor's] action against [surety]. The court correctly *600 determined that the arbitration fees [attorney fees and costs] were incurred by [subcontractor] as part of its action on the bond." (Maj. opn., ante, p. 585, italics added.)
In sum, the lower court found that a surety's liability "on the payment bond" for fees and costs of a subcontractor, incurred in an arbitration against surety's principal, is "immediate[]" on entry of the award, regardless of when or if litigation against the surety is initiated. The majority rejects this position implicitly by adopting one equally untenable, i.e., that where a subcontractor's cause of action pending against the surety is stayed, pending decision in an arbitration confined solely to the causes of action subcontractor asserts against contractor, such arbitration automatically becomes "an integral component" of subcontractor's stayed separate cause of action against the surety "on the payment bond."
The flaw in this reasoning is obvious: When the principal is released from the obligation to its claimant, no cause of action against surety on the bond securing performance of that satisfied obligation may be thereafter maintained. The applicable statutes clearly provide that the surety was not liable on the bond until the contractor became liable, and was not liable thereon after the principal paid the arbitration award as confirmed. (§ 3226 ["[T]he sole conditions of recovery shall be that claimant ... has not been paid...."].) The liability of the surety cannot be more extensive than the liability of the principal. (§ 2839 ["Performance of the principal obligation ... exonerates a surety."].)
The majority, however, proceeds to a strange and unprecedented fastening of liability on the surety to pay the subcontractor's fees and costs from which contractor was exonerated by judgment confirming the arbitration award.
No authority supports either position.

3. The Subcontractor's Three Causes of Action Which Were Arbitrated Were Not Actions on the Bond

The pleadings clearly demonstrate that the only action "on the payment bond" filed in this case was the fourth cause of action asserted by subcontractor against surety. The timely filing of such action by subcontractor, ensuring its right to recover on the surety bond if the obligation of the principal to subcontractor, becoming a judgment on its confirmation, remains unpaid, is commonly undertaken in all such commercial litigation. Such suits are filed as a precautionary procedure to preclude a surety from *601 invoking section 3249 (see fn. 4, ante); they are filed when, as here, separate administrative proceedings, formal or informal arbitration, or even negotiations between subcontractor and contractor are in progress, or are anticipated to be in progress, six months after the time when a stop notice must be filed on public works construction.
The fourth cause of action was never considered or ruled upon by the arbitrator. The surety never joined the arbitration, and neither contractor nor subcontractor sought its joinder therein; both treated the arbitration as involving only themselves.
The root of the majority's confusion lies in its equating the contractual arbitration between subcontractor and contractor, where attorney fees and costs are not recoverable, with a legal action "on the payment bond" against the contractor's surety. A principal's failure to pay an arbitration award confirmed by judgment will generally trigger the surety's liability in a pending cause of action on its bond for the amount of that judgment. The majority, however, has brokered a new rule  the surety is always liable for the subcontractor's arbitration fees and costs as an additur, in effect, to the arbitration judgment which literally excludes them, even though that judgment has been wholly satisfied.
The critical fact the majority ignores is this: Although subcontractor chose in the lawsuit filed in the superior court to join both the contractor and its surety as defendants, asserting separate and distinct causes of action against them, under long-standing precedent, joinder of both, while permitted, was not required. Subcontractor had the option, which it chose to waive, of severing or trying its cause of action against the surety, rather than tacitly, by nonopposition, consenting to its stay pending the arbitration with contractor. Suit against, or concluding arbitration with, the contractor was in no way a precedent condition to subcontractor's separate pursuit of its fourth cause of action on the payment bond against the surety, had subcontractor chosen to do so. (See Pneucrete Corp. v. U.S. Fid. & G. Co. (1935) 7 Cal. App.2d 733, 738 [46 P.2d 1000].) "The action upon the statutory bond is not in any sense based upon the personal liability of the contractor but is based upon the obligation of the bond, since the bond provides a separate and distinct and statutory remedy. The obligation of the bond, therefore, is enforceable without reference to any contract between the contractor and the materialman. [Citations.]" (Ibid.)
Here, the subcontractor permissibly elected its remedies. It could try its cause of action against the surety alone and, in that suit, recover its attorney *602 fees and costs incurred therein, as well as damages. Alternatively, it could take the faster, speedier, and generally less expensive route of arbitration against the contractor, without a right to recover fees and costs as it had contractually agreed to do. The subcontractor chose the latter course. It did not seek to sue only the surety; nor did it seek to sever and proceed to try separately its claim in the fourth cause of action of its complaint against the surety, which it clearly had the right to do.[10] Confirmation of the arbitration award, in the action in which the stayed cause of action against surety was filed, did not convert the resulting judgment from a contract arbitration into an action "on the payment bond." The majority's focus on the arbitration proceedings, generating the fees and costs it has affirmed to subcontractor, as a "precursor" to subcontractor's recovery on a pending cause of action is misplaced. (Maj. opn., ante, p. 585.)
On this analysis, every time a subcontractor made a disputed claim to a bonded contractor, and the parties wholly settled that claim after either negotiations or informal or formal arbitration, the surety would never be relieved of liability to the subcontractor. The contractor's agreement to pay any portion of subcontractor's original claim thus negotiated or determined and settled would, the majority reasons, arise from proceedings denominated a "precursor" to subcontractor's potential right of recovery on surety's bond, if contractor should default in payment; and although contractor fully satisfies subcontractor's claims, regardless of their initial propriety, at the conclusion of such proceedings, subcontractor would always recover from surety its fees and costs incurred therein.
The naivete of such reasoning is startling, plainly ignoring the common practices and experiences of the real commercial world. Subcontractors' claims, like many damage claims, are often initially inflated and legitimately disputed, wholly justifying a contractor's refusal to pay them on demand until negotiations or arbitration produces a recovery the parties agree on or are required to accept. The majority would require contractor's surety to fund subcontractor's attorney fees and costs incurred in any such proceedings regardless of such circumstances, because such proceedings, necessary to determine the obligation of contractor that surety bonds, are a "precursor" *603 to subcontractor's potential recovery against surety on its bond only if contractor fails to pay the subcontractor's claim as thus determined.
Finally, the majority's "precursor" focus is obviously irrelevant. The focus required by the Legislature is clear. The "sole condition[]" of a subcontractor/claimant's recovery on the surety's bond is that "the full amount of [its] claim" has not been paid. (§ 3226.) The amount of that claim  the bonded obligation of the contractor/principal  was established by arbitration, a method freely chosen by contract and confirmed by judgment. That judgment of confirmation required both contractor and subcontractor to pay their own arbitration fees and costs. Subcontractor filed a satisfaction of that judgment, eliminating any statutory liability to it of surety.
One will search the case and statutory law in vain to find any support for the majority's "precursor" analysis.
In sum, the majority has simply permitted the subcontractor to utilize the provisions of its contract, with all the advantages of arbitration it provided, and awarded it attorney fees and costs which the contract proscribed and the arbitrator denied. Subcontractor could only recover such expenses if incurred in a trial on its fourth cause of action against surety  a trial it chose to forgo, for arbitration against contractor, on a cause of action which became moot when the judgment on arbitration was wholly satisfied by contractor.

4. The Majority Has Misanalyzed Sections 3248 and 3250 and the Applicable Case Law

The subcontractor is not aided, as the majority believes, by sections 3248 and 3250. Those sections provide that a subcontractor, such as respondent, could recover from the surety only the attorney fees and costs incurred in an action against the surety on its payment bond, not fees and costs incurred in an arbitration against the contractor, based upon breach of contract, in which the surety was neither party nor participant.
Section 3248 sets forth the requirements of a payment bond on a public works project, and provides in pertinent part that the bond must include a provision stating the surety is liable "in case suit is brought upon the bond" for "a reasonable attorney's fee, to be fixed by the court." (Subd. (b), italics added.) Section 3250 includes a parallel provision stating, "An action on the payment bond may be maintained separately.... In any action, the court shall award to the prevailing party a reasonable attorney's fee, to be taxed as costs." (Italics added.)
*604 The causes of action which subcontractor arbitrated against contractor simply put in issue three contract claims against contractor, and did not involve any issue concerning the payment bond. The arbitration award, excluding fees and costs per the subcontract, was promptly paid by contractor; and subcontractor acknowledged full satisfaction of the judgment resulting from confirmation of the arbitration award.
The majority refuses to follow a long line of precedent, which it has ineffectively attempted to distinguish. As this court (Division Two) and others have ruled, the provisions of sections 3248 and 3250 are intended to allow only an award of fees and costs incurred in an action against the surety on the payment bond, not fees and costs incurred in some other, albeit factually related, action. (See, e.g., Western Concrete Structures Co. v. James I. Barnes Constr. Co. (1962) 206 Cal. App.2d 1, 10-11 [23 Cal. Rptr. 506] [This court (Division Two) held that the attorney fees provision in issue here, then contained in section 4207 of the Government Code, only allowed an award for fees incurred in an action on the payment bond brought by a claimant against the surety, not for a contract action brought against the contractor.]; accord, Acoustics, Inc. v. Trepte Constr. Co. (1971) 14 Cal. App.3d 887, 918 [92 Cal. Rptr. 723] ["We find no authority, and none has been cited, which authorizes an award of attorneys' fees ... in defense of the contract action. Therefore, the award of any attorneys' fees [in such an action] cannot be sustained...." Italics added.]; cf. also Boliver v. Surety Co. (1977) 72 Cal. App.3d Supp. 22, 31 [140 Cal. Rptr. 259] [Since the surety's obligation is coterminous with that of the principal, the surety's liability for attorney fees turns on the question of whether the claimant's contract with the principal authorizes an award of such fees.].)
Examination of the legislative history of section 3250, of which we have previously taken judicial notice at surety's unopposed request, confirms the view that this section only authorizes an award for attorney fees and costs incurred in an action on the payment bond against the surety, not for fees and costs incurred in an arbitration of an underlying contract or other action against the contractor.[11]
*605 Sections 3248 and 3250 do not, therefore, authorize the arbitration attorney fees and costs which the lower court awarded subcontractor against the surety.[12]
Neither subcontractor nor the majority has cited any authority for the specific holding in this case. The majority's authorities consist simply of statements of general principles of law which, while abstractly correct, are irrelevant to the legal question in issue here, and of unpersuasive attempts to distinguish contrary authorities which are specifically relevant.
As a policy matter, the Legislature may someday provide, as the majority has here, that attorney fees and costs expended by a subcontractor in its contractual arbitration with its contractor should be recoverable from the latter's surety, whether or not included in the confirmed arbitration award. It clearly has not done so, and no reported case implies or so holds. "We cannot, however, create a right to fees in that context where the Legislature has not seen fit to enact one." (Abbett Electric Corp. v. California Fed. Savings & Loan Assn. (1991) 230 Cal. App.3d 355, 360-361 [281 Cal. Rptr. 362] [Division Four of this district rejected an analogous argument that attorney fees should be recoverable where a mechanic's lien is foreclosed, in light of the general public policy favoring the claims of materialmen who contribute to a project.].)

5. California's Public Policy Respecting Sureties Requires Reversal

For 120 years, the legislative policy of California regarding the liability of sureties has mandated that: "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal...." (§ 2809.) The majority ignores this policy, by enlarging a surety's liability to pay fees and costs its principal was exempt from paying by contract, where an arbitration award absolved that principal from paying such fees and costs, and where the award so providing became the equivalent of a civil judgment, in the very same action in which a contrary judgment was later filed compelling the surety to pay the same. The surety's potential liability on its performance bond ceased to exist when the obligation of its principal, established by judgment confirming an award in an arbitration to which subcontractor agreed, was acknowledged to be wholly satisfied.
The majority's only rationale, its unsupported rhetorical claim that public "policy ... favoring mechanics, laborers and materialmen" supports its *606 result, unfortunately casts a wider net than intended. (Maj. opn., ante, p. 582.) It is equally as applicable to private as to public works, and poses the same implications for both. This misplaced rationale has never previously been asserted as a ground for allowing one voluntarily participating in an arbitration it contracted for to recover attorney fees and costs which it agreed to bear itself.
The majority also seems to imply, contrary to the trial court, that a surety's liability for fees and costs may depend on whether a lawsuit against the surety is pending when the arbitration is completed. Such sophistry does not withstand the most cursory analysis. If no such action was then pending, the majority opinion would nonetheless require sureties to pay those fees and costs to a subcontractor in litigation filed after the arbitration order issued as an "integral component" of the action against surety; i.e., the characterization of the arbitration as an "integral component" of the "action" against surety would logically apply to such actions filed before, after, or during arbitration. Either way, the subcontractor's arbitration fees and costs would ultimately always, on the majority's view, constitute a claim against surety "on the payment bond."
The implications for a surety's premium adjustments, adding to the expense ultimately passed to consumers and taxpayers in this state in all bonded works of improvement, public and private, will be potentially onerous. Here, the principal amount awarded subcontractor in the arbitration was $51,480; the amount awarded against surety by the lower court, which the majority upholds, for subcontractor's attorney fees and costs it claimed as incurred in the arbitration was $93,028.92.
It takes little imagination to project premium increases for surety bonds if, contrary to the provisions of section 2809, the surety for a multimillion dollar public works construction contract is compelled to pay amounts it cannot ever reasonably forecast for attorney fees and costs incurred by a subcontractor in an arbitration with its principal. The surety was not joined, was not required to join, and did not undertake the additional expense of joining that arbitration as the majority suggests it should have. We are not told why a surety should participate in an arbitration of contractual disputes between its principal and another. No precedent requires the surety to do so. A surety's role is generally passive. That joinder, even if allowed, would subject the surety to additional and unnecessary litigation expenses, to be recovered by higher premiums passed through to the builders of the bonded project and, ultimately here, to the taxpayers of this state.
The purpose of the bond for the project in the case at bench  which the majority loses sight of  was to guarantee performance of a public works *607 project including highway bridging, not to bankroll costly multiparty litigation. Contractor and subcontractor agreed to provide a speedy method for the resolution of any disputes, through arbitration, with each party to bear its own fees and costs. Such an agreement does not fall afoul of any "public policy"  rather, this is what the public policy in favor of arbitration, and the finality of arbitration awards, was meant to encourage.

6. California's Public Policy Regarding Arbitration Also Requires Reversal

Thus, another inherent contradiction exists in the majority's position. Even if, as the majority suggests, subcontractor's fees and costs in arbitration should be recoverable from the surety because in some sense it was a part of the action "on the payment bond," still the majority faces the obstacle of the arbitration award having been confirmed as a judgment in this very action on the payment bond.[13] That judgment requires the subcontractor to pay its own arbitration fees and costs, and is then followed by a judgment in the same lawsuit contrarily directing surety to pay the same. The majority opinion's suggestion, that the judgment confirming the arbitration award is an "integral component" of the action on the bond, but is somehow ineffective in that action to require subcontractor to follow the judgment's terms in paying its own fees and costs, is self-contradictory.
Arbitration agreements on bonded works of improvement will be discouraged by the majority's opinion, which reaches such unintended and capricious results. The uncertainty as to potential liability for fees and costs, despite an agreement negating such liability, will only cause parties to abandon arbitration. The majority opinion will simply encourage full-fledged litigation at greater expense and greater length in our overcrowded courts, contrary to the expressed intention of the California Legislature.
More critically, the majority's focus on what subcontractor "understood" the parties' agreement to mean  rather than a proper focus on what that agreement actually says  will cause much mischief in failing to satisfactorily explain why a provision, that each party shall bear its own attorney fees and costs, should not be "understood" to mean just that. (Maj. opn., ante, p. 593.)
In common commercial disputes such as this one, the parties should be taken at their word when they agree to bear their own legal costs incurred in *608 an arbitration. The majority wanders far afield when it relies instead upon the "strong policy of this state favoring mechanics, laborers and materialmen" to overrule legislative enactments and the equally strong policy in favor of the settlement of disputes quickly and cheaply through agreements to arbitrate. (Maj. opn., ante, p. 582.) Our state's policy in favor of "mechanics" does not mean that "mechanics" should always prevail in litigation, regardless of the merits.
The majority, in summary, ignores the only applicable public policy  the strong policy in favor of the enforceability of arbitration agreements. "Title 9 of the Code of Civil Procedure, as enacted and periodically amended by the Legislature, represents a comprehensive statutory scheme regulating private arbitration in this state. [Citation.] Through this detailed statutory scheme, the Legislature has expressed a `strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.]" (Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 9 [10 Cal. Rptr.2d 183, 832 P.2d 899].) The parties, having agreed to bear their own legal costs in the arbitration, cannot reasonably be deemed to have contemplated a further costly tussle over the contractor's indirect liability for those fees and costs. They contracted for arbitration in the expectation that the arbitrator's award would be final. "This expectation of finality strongly informs the parties' choice of an arbitral forum over a judicial one. The arbitrator's decision should be the end, not the beginning, of the dispute." (Id. at p. 10.)

7. The Majority Precludes a Bonded Principal From Ever Effectively Contracting Against Payment of a Subcontractor's Fees and Costs Incurred in Arbitration

While subcontractor and the majority theorize arbitration might be discouraged if fees and costs are not awarded for arbitration proceedings, a greater disincentive to arbitration is erected by the majority.
If the majority opinion stands, no surety whose principal participates in and loses an arbitration arising from a contract the surety bonds, wherein each participant agrees to pay its own arbitration fees and costs, will ever be exempt from paying such fees and costs of the winning side. A surety will simply become a passive cash cow, satisfying, in the first instance, claims for fees and costs which have been waived by the participants in an arbitration in which the surety did not participate, and as to which it has only secondhand knowledge. This will be followed by additional litigation when the surety sues to enforce its statutory subrogation rights against its principal *609 under section 2848[14] upon satisfying the latter's obligation for such fees and costs.
A contractor's contract to arbitrate disputes with its subcontractor by an agreement negating the former's liability for the latter's arbitration fees and costs becomes meaningless. That liability will simply always be passed through to and paid by the contractor because the surety's obligation to pay those expenses will trigger the contractor's obligation to repay the surety therefor. Section 2847[15] binds the principal of the surety to reimburse the latter for all disbursements made on the principal obligation, including necessary costs and expenses in connection therewith. (Post Bros. Constr. Co. v. Yoder (1977) 20 Cal.3d 1, 8 [141 Cal. Rptr. 28, 569 P.2d 133]; cf. Maurice Merc. Co. v. American Emp. Ins. Co. (1934) 140 Cal. App. 354, 360 [35 P.2d 1047] [Lease guarantors under bond are entitled to attorney fees under section 2847.].)
In sum, the contractor, clearly agreeing with the subcontractor to pay no attorney fees or costs incurred in arbitration, is compelled by the majority to pay them indirectly to the subcontractor by reimbursing the surety therefor. I find no legislative intent or public policy vitiating a contractor's contractual immunity from paying a subcontractor's arbitration fees and costs, by requiring contractor to pay them to a third party, contractor's surety. The financial result the contractor sought legitimately to avoid for a good consideration is nonetheless imposed by the majority's decision.

C. Conclusion

The arbitration of the parties was not an action on the bond. It was an action on the contract of the parties. The surety's liability on the bond for subcontractor's arbitration fees and costs was not established by the arbitration award or its court confirmation.
Subcontractor's attempt to collect its attorney fees and costs incurred in arbitration in this action violates the rule that a surety cannot be liable for more than its principal, and constitutes a forbidden attempt to vary or vacate the arbitration award without any sufficiently compelling reason. (See Moncharsh v. Heily & Blase, supra, 3 Cal.4th at p. 10.) The surety was immune *610 from payment of subcontractor's arbitration fees under the present statutory scheme.
The applicable law wholly precludes the majority's result. I would reverse the judgment.
A petition for a rehearing was denied July 9, 1993, and appellant's petition for review by the Supreme Court was denied September 30, 1993. Panelli, J., and Baxter, J., were of the opinion that the petition should be granted.
NOTES
[1] "The filing of a stop notice is not a condition precedent to the maintenance of an action against the surety or sureties on the payment bond. An action on the payment bond may be maintained separately from and without the filing of an action against the public entity by whom the contract was awarded or any officer thereof. In any action, the court shall award to the prevailing party a reasonable attorney's fee, to be taxed as costs." (Civ. Code, § 3250, italics added.)
[2] Recently, the Court of Appeal in Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co. (1992) 6 Cal. App.4th 1266 [8 Cal. Rptr.2d 587], held that the surety in a performance bond is bound by an agreement to arbitrate contained in a construction contract or subcontract to which the surety was not a party, but which is incorporated into the bond by reference. (Id., at pp. 1272-1274.) That case is of questionable application here for several reasons: First, it postdates this action and recognizes the absence of prior California authority compelling the surety to arbitrate. (Id., at p. 1272.) Second, there is no indication in the present case that the bond incorporated the subcontract by reference or that Liton as the subcontractor could have forced UPI into the arbitration. Third, in the unlikely event Liton could have forced UPI into the arbitration with Bay Cities, there is no authority requiring Liton to do so. Finally, UPI was not prevented from participating in the arbitration. It could have submitted a declaration to the trial court agreeing to join in the arbitration proceeding and to have its rights determined in that forum pursuant to Public Contract Code section 10240.9. It could also have joined in Liton's opposition to Bay Cities' motion to compel arbitration. Instead, UPI consistently resisted any involvement in the arbitration, raising an affirmative defense that the action should be abated pending completion of the arbitration proceedings.
[3] That section provides: "An arbitration award rendered against a principal alone shall not be, be deemed to be, or be utilized as, an award against his surety. [¶] The intent of this legislation is to apply existing law to arbitration awards." (See fn. 2, ante.) The Legislature might at some point productively inquire whether arbitration is at all discouraged in the public works context by providing subcontractors a remedy on a surety bond or by any other mandate of Civil Code sections 3247-3250.
[4] "Performance of the principal obligation, or an offer of such performance, duly made as provided in this Code, exonerates a surety." (Civ. Code, § 2839.)
[5] As we conclude Liton did not waive its right to recover attorney fees from UPI pursuant to Civil Code section 3250, we need not decide whether Civil Code section 3268 would apply to permit a waiver of such fee rights. We note, however, that a serious question arises as to whether such waiver would be ineffective as against public policy. (Civ. Code, § 3513; see Pneucrete Corp. v. U.S. Fid. & G. Co., supra, 7 Cal. App.2d 733, 740 ["The requirement of a bond in this case is a matter of public concern and any attempt to limit, nullify or render ineffectual the bond or any of its terms would be against public policy" (citations omitted).].)
[*] Presiding Justice of the Court of Appeal, First District, Division Five, sitting under assignment by the Chairperson of the Judicial Council.
[1] Unless otherwise indicated, all subsequent statutory references are to the Civil Code.
[2] By one arbitrator mutually chosen; or by three arbitrators, the neutral arbitrator chosen by the two respectively designated by each party.
[3] Filing the complaint ignored the provision of section 25 of the subcontract specifying an arbitration decision "shall be a condition precedent to any right of legal action."
[4] Section 3249 provides, in pertinent part: "Suit against the surety or sureties on the payment bond ... must be commenced before the expiration of six months after the period in which stop notices may be filed...."
[5] Although subcontractor objected to this order on the grounds, inter alia, that Public Contract Code section 10240.9 required its consent as a condition to being joined in the OAH arbitration, which it had not given, this objection was not pursued below or on this appeal.
[6] Contrary to the majority's implication, subcontractor was not compelled to arbitrate with contractor through the OAH arbitration upon completion of that arbitration with Caltrans (maj. opn., ante, p. 585); subcontractor stipulated to do so. Subcontractor, in resisting the initial OAH arbitration and thereafter in stipulating to private arbitration, made no effort to exercise its right under section 3250 to proceed separately against surety, as discussed post.
[7] The reporter's transcript of the proceedings below of February 20, 1991, (not filed herein until Nov. 3, 1992) mistakenly identifies section 2807 as section 2827, a section which does not exist. The lower court described the statute on which it relied as one providing "security [surety] is liable immediately upon default of the principal," which paraphrases section 2807.
[8] In stating his findings on the record, the trial court actually assumed, erroneously, that no litigation between the parties was pending when the arbitration between contractor and subcontractor was concluded: "We know that money that was arbitrated and resolved by the arbitrator in favor of [subcontractor], at that point when that occurred, which occurred prior to the filing of any litigation, ... [surety] became immediately liable to [subcontractor] under the payment bond." (Italics added.)
[9] That "existing law" related to case law regarding judgments against a principal and was summarized for the Senate Judiciary Committee as follows: "[A] judgment entered against a principal alone is not conclusive against [its] surety. A surety may be bound by the judgment only if the suretyship agreement specifically provides. [¶] This bill would provide that an arbitration award rendered against a principal alone shall not be, be deemed to be or be utilized as an award against [its] surety." (Assem. Com. on Judiciary, Dig. of Sen. Bill No. 1194 (1979-1980 Reg. Sess.) as amended May 25, 1979.)
[10] Code of Civil Procedure section 1281.4 provides at paragraph three: "If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only." The majority, thus, mistakenly casts the burden of moving to sever the fourth cause of action or to participate in the arbitration on surety, ignoring subcontractor's failure to ask for the severance remedy and separate pursuit of surety it was entitled to as a matter of law; the majority ignores the fact that the option to separate, sever, and pursue the fourth cause of action, or to leave it pending during arbitration of the three causes of action against contractor, was that of subcontractor  not surety.
[11] The 1970 amendment of section 3250, concerning action on the payment bond, clearly indicates that addition of the language "In any action, the court shall award to the prevailing party a reasonable attorney's fee, to be taxed as costs" was only intended to expand payment of such fees on appeal, not for those incurred in arbitration. (Stats. 1970, ch. 479, § 1, p. 950, italics added.) It "permit[s] the prevailing party to recover such fees on appeal." (Id. at § 4.)
[12] I do not, accordingly, reach the surety's additional contentions that such an award violated its due process rights, because it was not a party to the arbitration; but I note generally that troubling questions of fairness and due process are raised by the circumstances of this case.
[13] "If an [arbitration] award is confirmed, judgment shall be entered in conformity therewith. The judgment so entered has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action; and it may be enforced like any other judgment of the court in which it is entered." (Code Civ. Proc., § 1287.4.)
[14] "A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what [it] has expended...." (§ 2848.)
[15] Section 2847 provides, in pertinent part: "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what [the surety] has disbursed, including necessary costs and expenses...."