647 So.2d 289 (1994)
Judy CINGHINA, as personal representative of the estate of Mildred Ale, Deceased, and Louise Marien, surviving Mother of Mildred Ale, Deceased, Appellants,
v.
Robert RACIK and Government Employees Insurance Company, a Washington, D.C. corporation, Appellees.
No. 93-1585.
District Court of Appeal of Florida, Fourth District.
December 14, 1994.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, and Sheldon J. Schlesinger, P.A., Fort Lauderdale, for appellants.
John Beranek of Macfarlane Ausley Ferguson & McMullen, Tallahassee, and L. Kenneth Barnett of Barnett, Hill, Barnard & Hill, Fort Lauderdale, for appellee Government Employees Ins. Co.
BARR, ROBBIE M., Associate Judge.
On June 8, 1988, Mildred ("Dolly") Ale was killed while riding as a passenger in a car driven by Robert Racik. On behalf of the estate and the survivors, Dolly's sister, Judy Cinghina (the personal representative of the estate) and Dolly's mother (Louise Marien) sued Mr. Racik and the company insuring the car (Government Employees Insurance Company) for wrongful death. At the close of the evidence, the court directed a defense verdict on the ground that Dolly's three adult children were not "survivors" within the meaning of Florida's Wrongful Death Act. See §§ 768.16-.27, Fla. Stat. (1987). Two of Dolly's children, Kelli Ale and Cheryl Ale *290 Auxier, appeal.[1] The sole question on appeal is whether the evidence presented a jury question as to the status of Dolly's two daughters being "partly or wholly dependent" upon Dolly for financial support or services at the time of her death. We answer in the negative, and accordingly affirm.
Because wrongful death actions did not exist at common law, all claims for wrongful death are created and limited by Florida's Wrongful Death Act. Section 768.20, Florida Statutes (1987), limits recovery to statutory "survivors:"
The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in the act, caused by the injury resulting in death.
Section 768.18, Florida Statutes (1987), defines "survivors:"[2]
(1) "Survivors" means the decedent's spouse, minor children, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters.
(2) "Minor children" means children under 25 years of age, notwithstanding the age of majority.
(emphasis added).
Accordingly, a determination of financial dependency is a prerequisite for any adult, non-parent blood relative wishing to bring a wrongful death action in Florida. In Duval v. Hunt, 34 Fla. 85, 15 So. 876 (1894), our supreme court fashioned a test for determining whether an adult is a dependent entitled to institute an action under that statute: "There must be, when adults claim such dependence, an actual inability to support themselves, and an actual dependence upon some one else for support, coupled with a reasonable expectation of support, or with some reasonable claim to support, from the deceased." Id. at 101, 15 So. at 881 (emphasis added). The state of dependency is determined by factual circumstances existing at the time of death. Wadsworth v. Friend, 201 So.2d 641 (Fla. 4th DCA 1967); accord King v. Font, 612 So.2d 662 (Fla. 2d DCA 1993).
Neither Kelli, 27, nor Cheryl, 29, are "minor children" for the purposes of section 768.18. To maintain a wrongful death action, they therefore must qualify as wholly or partially dependent. Even viewing the facts and inferences in light most favorable to the appellants, as we must, the appellants do not meet the Duval test for dependency.
No reasonable view of the evidence would support a jury determination that either Kelli or Cheryl could meet the first Duval requirement: actual inability to support themselves. Both daughters were healthy, able, and educated women. Kelli had completed vocational training in cosmetology and had worked at numerous bars and restaurants. She testified that her mother had raised her to be self-sufficient, and she was not counting on her mother to support her forever. Cheryl was an actress who had toured with a ballet company for two full years, won a principal role in a New York play called "Grease" and successfully auditioned for the Broadway show, "The Starlight Express." At the time her mother died, Cheryl was working in a Broadway-bound show called "The Merry Widow." Several months prior, she worked in shows in Europe. Between jobs, she briefly worked as a waitress or spent time with her mother.
Florida courts have consistently looked to whether the party claiming dependence has the ability, in fact, to provide for herself after the death of the decedent. See Burgh v. Carroll, 217 So.2d 353 (Fla. 3d DCA 1969) (finding no actual inability where appellants found employment after the decedent's death). In this case, following their mother's *291 untimely death, neither Kelli nor Cheryl were physically or mentally unable to support themselves. Although they presented evidence that they could not afford every luxury item, there was no evidence that they were unable to provide basic necessities  food, housing, and daily expenses  for themselves.
Similarly, appellants were unable to demonstrate Duval's second requirement: an actual dependence on the decedent. It is true that two years before her death, Dolly cosigned a mortgage on a townhouse for Kelli, who could not then qualify on her own. Kelli had, however, acquired a windfall of $38,000 in 1986, and she used $12,000 of this sum as a down payment on the townhouse. Kelli invested the rest in a brokerage account; ultimately she spent the money on furniture for her new home, a truck, living expenses, and upkeep on a horse she received as a gift. Additionally, Kelli acknowledged that most of the time she paid her own bills, and that when her mother did loan her money, Kelli paid it back. These loans were business-like transactions; Dolly kept records of all loans made to her children.
When asked how much total support her mother provided for her between 1983 and 1988, Cheryl could only recall a $2,500 loan made four years before Dolly's death. That loan paid for a trip to Paris, which Cheryl repaid from money she made while in Europe. In fact, Cheryl saved some money during those five years, and had hoped to be able to offer some financial assistance to her mother. Although Cheryl occasionally returned to Florida and stayed with her mother for what she stated were financial reasons, the last such trip was in 1987, approximately one and one-half years before Dolly's death. This trip took place when Cheryl had a break between shows; after spending about a month with her mother, she left for Europe to resume her career. We note that appellants' own financial expert testified that Kelli and Cheryl relied on their mother only for extras which they could not always afford.
We reject appellants' contention that because Kelli and Cheryl could not pay all their bills without some financial support from Dolly, the daughters were partially dependent on their mother at the time of her death. The trial court found otherwise, as a matter of law. Appellate decisions in this area are replete with defense summary judgments upheld on similar facts.[3] Section 768.18(1) does not provide a safe harbor for persons fortunate enough to have a relative whose generosity enables them to acquire luxury items or to live beyond their means.
[N]otwithstanding the liberal construction to be applied in accordance with Florida Statutes 768.17, this Court construes a blood relative, partly or wholly dependent on a decedent for support or services, to require actual dependency, though same may be partial, in order to qualify as a "survivor" under the "Florida Wrongful Death Act," and the word "dependent" connotes one who looks to another for aid or support, relies upon same and one who would not be able to sustain himself without such aid or support.

Guillen v. Kitching, 354 So.2d 900, 901 (Fla. 3d DCA), cert. denied, 361 So.2d 832 (Fla. 1978) (emphasis added). An adult fully capable of providing her own necessities of life will not be classified as dependent or partly dependent, even if the decedent, like Dolly, voluntarily supplies money, food, and lodging which permits the healthy and able claimant to live without working.
Appellants argue that the daughters' trial assertions of partial financial dependency are sufficient to withstand any motion for directed verdict. Gardner v. Holifield, 639 So.2d 652, 657 (Fla. 1st DCA 1994) ("In Florida, evidence of inconsistency in testimony and documentary evidence itself creates a disputed issue of fact for the jury, which may not be resolved by the trial court adversely to the non-moving party."). Gardner, however, involved two affidavits issued by the same person, which contained factual conflicts regarding whether the defendant was acting within the scope of his employment. There are no such factual conflicts in the instant case. The only "contradictions" involve the *292 daughters' conclusory assertions of financial dependency, and the evidence proving otherwise. Conclusory testimony by the daughters, without a factual basis, is not sufficient to create a jury issue.
AFFIRMED.
GUNTHER and STEVENSON, JJ., concur.
NOTES
[1] Because the decedent and one of the parties share a last name, for clarity's sake, we refer to them by first name. We intend neither disrespect nor gender bias by this familiarity.
[2] The statutory definition of "survivors" was amended in 1990 to include all children of the decedent, regardless whether the children have reached the age of majority. See § 768.18(1), Fla. Stat. (Supp. 1990). Because Dolly's death occurred in 1988, however, the earlier version of the statute applies. At oral argument, appellee suggested that, due to the statutory change, an opinion here has little precedential value. We agree, but write, nevertheless, for the parties' benefit.
[3] See, e.g. Guillen v. Kitching, 354 So.2d 900 (Fla. 3d DCA), cert. denied, 361 So.2d 832 (Fla. 1978); Burgh v. Carroll, 217 So.2d 353 (Fla. 3d DCA 1969).