GREEN, Judge.
Appellant Gwendolyn Thompson appeals a summary judgment entered against her for compensatory and punitive claims as an adult “survivor” for the alleged wrongful death of her brother, Gaylord Thompson, as well as the dismissal of her claim for punitive damages pursuant to a bad faith claim against State Farm Mutual Automobile Insurance Company (“State Farm”). We affirm the summary judgment based upon Cingkina v. Racik, 647 So.2d 289 (Fla. 4th DCA 1994), but we reverse the dismissal of the bad faith claim for punitive damages.
Gaylord Thompson was killed in 1992 in an automobile accident with an alleged drunk driver. At the time of the accident, the decedent was insured by a State Farm auto policy which also included uninsured motorist coverage. Gaylord’s sister, Gwendolyn, brought this wrongful death action against George Milton Christie, the alleged drunk driver, and Joseph Walter Williams, the car’s owner, both of whom are alleged to have been uninsured, and State Farm.[1] Ms. *1071 Thompson sought compensatory damages for herself as being partially dependent on her late brother for support, damages for the estate and punitive damages. Ms. Thompson’s action also included compensatory claims against State Farm for uninsured motorist coverage, and compensatory and punitive damages for bad faith under section 624.155, Florida Statutes (1991).
State Farm filed a motion for summary judgment on the grounds that Gwendolyn Thompson was not a “survivor” within the meaning of section 768.18, Florida Statutes (1991). The undisputed evidence in the record revealed that at the time of the decedent’s death, Ms. Thompson was 46 years old and had lived alone in a townhouse since 1979. She was employed as a special projects manager with Flagler Federal and earned “decent money” according to her deposition testimony. Prior to his death, the decedent was employed as a repairman and had maintained a separate residence with co-plaintiff Marion Dyer for fifteen to twenty years. Ms. Thompson further testified that her dependency on her brother was for his payment of expenses on a jointly owned house which they had both inherited from their mother. Although Ms. Thompson and her brother had rented out this home prior to his death, Gaylord had assumed all of the expenses on this rental property. Ms. Thompson’s only other apparent dependency on her late brother was for his repair services on odd jobs around the townhome which she occupied. Based upon Cinghma, the trial court found this undisputed evidence to be insufficient as a matter of law to deem Ms. Thompson a “survivor” for purposes of the wrongful death statute. We concur.
Florida’s Wrongful Death Act, section 768.20, Florida Statutes (1991), limits recovery to statutory “survivors” who are defined as:
... the decedent’s spouse, children, parents, and, when partly or wholly depew-dent on the decedent for support or services, any blood relatives and adoptive brothers and sisters.
§ 768.18(1), Fla.Stat. (1991) (emphasis added). In Cinghina, the Fourth District pointed out that a determination of financial dependency is a prerequisite for any adult, non-parent blood relative wishing to bring a wrongful death action in Florida. Cinghina, 647 So.2d at 290. The test for determining whether an adult is dependent is “an actual inability to support [one’s self], and an actual dependence upon some one else for support, coupled with a reasonable expectation of support, or with some reasonable claim to support, from the deceased.” Id. (emphasis omitted) (quoting Duval v. Hunt, 34 Fla. 85, 101, 15 So. 876, 881 (1894)).
Here, it is readily apparent from the unre-futed evidence that Ms. Thompson cannot meet this test. She was financially self-sufficient and she clearly did not depend upon her late brother for her basic support. The fact that the decedent may have expended funds on jointly held rental property or performed odd jobs for his sister at her townhouse is insufficient, we think, for her to be deemed a “statutory survivor” under the wrongful death act. Therefore, summary judgment was properly entered against her on her wrongful death claim.
As to her second point on appeal, Ms. Thompson argues that the trial court erred in dismissing Count VII for punitive damages pursuant to her bad faith claim against State Farm. We. note initially that the record is somewhat confusing on the events which preceded the order of dismissal of Count VII. In Count VI of her complaint, Ms. Thompson pled a cause for bad faith pursuant to section 624.155, Florida Statutes (1991). Count VII was a separate count for punitive damages for the bad faith claim asserted in Count VI. On July 30, 1993, State Farm moved to dismiss both Counts VI and VII solely on the grounds that appellants could not prosecute a bad faith claim prior to the conclusion of the underlying litigation for contractual uninsured motorist benefits. This motion was heard on October 19, 1993 but no written order was entered at that time. Subsequently, on October 25, the court entered an agreed order by the parties which abated Count VI “pending the outcome of the under- *1072 lying litigation for uninsured motorist benefits herein.” On the same date, however, the court inexplicably entered its order dismissing Count VII for punitive damages pursuant to the motion to dismiss filed by State Farm on July 30. Neither party has offered us any explanation for this anomalous treatment of these related counts pursuant to the same motion. In the absence of such an explanation, we can only assume that the parties inadvertently omitted Count VII in their agreed order to stay and that the trial court thereafter inadvertently dismissed Count VII. We therefore reverse the same and remand for further proceedings.
Affirmed in part and reversed in part.

. Marion Dyer, Gaylord’s girlfriend, joined Ms. Thompson as a co-plaintiff, seeking compensatory and punitive damages for the injuries she *1071 received as a co-occupant of the car with Gay-lord.